ATTORNEYS FOR APPELLANTS
Patrick A. Shoulders
Jean M. Blanton
Evansville, Indiana

ATTORNEYS FOR AMICUS CURIAE INDIANA
COALITION FOR OPEN GOVERNMENT
Kurt A. Webber
Carmel, Indiana

ATTORNEYS FOR AMICUS CURIAE HOOSIER STATE
PRESS ASSOCIATION FOUNDATION
Steven M. Badger
Leah N. Wilson
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE STATE OF INDIANA
Gregory F. Zoeller
Attorney General of Indiana

Stephen R. Creason
Anne Mullin O'Connor
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Joseph H. Harrison, Jr.
E. Lee Veazey
Evansville, Indiana



FILED

Oct 07 2014, 11:38 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 82S04-1401-PL-49

EVANSVILLE COURIER & PRESS AND RITA
WARD,

*Appellants (Plaintiffs below),*

v.

VANDERBURGH COUNTY HEALTH
DEPARTMENT,

*Appellee (Defendant below).*

Appeal from the Vanderburgh Circuit Court, No. 82C01-1208-PL-409
The Honorable Carl A. Heldt, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 82A04-1302-PL-57

**Massa, Justice.**

This case presents the issue of whether the certificates of death that doctors, coroners, and funeral directors file with county health departments pursuant to Indiana Code chapter 16-37-3 are public records that a county health department must provide public access to under the Indiana Access to Public Records Act.  We believe they are, and therefore we reverse the trial court.

## Facts and Procedural History

### A.  The Creation of Indiana's Death Record System

In 1881, preventable diseases caused 25% of deaths in Indiana.  19 Brevier Legis. Rep. 200 (1881).  In addition to the obvious human cost, those deaths created an adverse economic impact on the state estimated at over $15 million dollars each year.  Id.  In an effort to ameliorate this condition, Senator Flavius J. Van Vorhis of Marion, Indiana proposed legislation to create a State Board of Health.[1]  Id. at 83.  Senator Van Vorhis drafted his bill "upon the experience of twenty-

---

[1] Senator Van Vorhis (1840–1913) served in the General Assembly during the 1881 and 1883 sessions. "Van Vorhis, Flavius Josephus," in 10 The National Cyclopaedia of American Biography 393, 393 (New York, James T. White & Co. 1900). As a Civil War veteran trained in both medicine and law, he was uniquely suited to understand Indiana's public health problems and address them through legislation.  Id.

Despite Senator Van Vorhis's expertise, this bill got off to a rocky start; it failed on third reading in a close vote (19–26) but upon reconsideration, was returned to committee.  19 Brevier Legis. Rep. 111 (1881).  When it came back to the floor, Senator Van Vorhis spoke at length in its favor, decrying the dearth of existing legislation to protect and promote the public health and citing statistics to demonstrate the prevalence and impact of preventable disease.  He concluded his remarks by saying:

two States having similar laws," id. at 84, and charged the Board to "endeavor to make intelligent and profitable use of the collected records of deaths and of sickness among the people" and recommend legislation to promote Hoosiers' health and well-being. 1881 Ind. Acts ch. 19, § 2. To that end, the new law empowered the Board to create and supervise a "system of registration of births, deaths and marriages." Id. at § 7.

It also established county boards of health designed to work in partnership with the State Board: "The Board of Health of each county shall act in conjunction with the State Board of Health, and it shall be the duty of the Secretary of such County Boards . . . to report such facts and statistics as may be required under instructions from, and according to, forms and blanks furnished by said Board." Id. at § 9. When a death occurred, the attending physician or caregiver was required to report the fact and cause of death to the board of the applicable locality. Id. at § 10. A physician making such a report was required to submit "a certificate of the cause of death, and such correlative facts as may be required in the blank forms furnished." Id. And these death certificates were public records:

> It shall be the duty of the Board of Health of each county to keep a complete record, according to the form prescribed by the State Board, of all marriages, births and deaths reported to them under the

---

> But does it speak well for the intelligence and business sense of the Legislative Department of the State that she is so far behind in all those efforts to protect life and health, and prevent the occurrence of those calamities that increase each year the number required to be cared for by the public charities of the State, and of the Counties of the State? . . . I can not bring myself to believe that any Senator upon this floor, when he comes to consider the subject in the light of the knowledge of the year 1881, will require argument to convince him that the necessity exists for the enactment of some such law as that proposed by this bill for the protection of life and health.

Id. at 201. In the vote immediately following these remarks, the bill passed 36–3. Id.

provisions of this act, and such record shall be open to the inspection
of any citizen without fee.

Id. at § 12.  Over the decades, the General Assembly amended this statutory scheme many times, but the county boards of health remained responsible for collecting, retaining, and producing individual death certificates, while the State Board compiled and analyzed the records and recommended appropriate public policy.

### B.  Indiana's Contemporary Death Record System

Indiana's death record system begins with the death certificate, which contains data used to generate a variety of other records.  A certificate of death is created pursuant to Indiana Code section 16-37-3-3(a) (Supp. 2013),[2] which provides:

> The physician last in attendance upon the deceased or the person in charge of interment shall file a certificate of death or of stillbirth with the local health officer of the jurisdiction in which the death or stillbirth occurred.  The local health officer shall retain a copy of the certificate of death.

It must include the decedent's cause of death as certified by the attending physician or local health officer.  Ind. Code §§ 16-37-3-5 (2008 & Supp. 2013), -6(b) (2008).  Since January 1, 2011, the person filing the death certificate must use a state-created electronic database, the Indiana Death Registration System, "to file a certificate of death with the local health officer of the jurisdiction in which the death occurred."  Ind. Code § 16-37-3-3(b); see also Ind. Code § 16-37-1-3.1 (Supp. 2013) (establishing the Indiana Death Registration System).

---

[2] Unless otherwise indicated, we cite herein the relevant statutes as they are currently in force.  Certain cosmetic amendments went into effect on July 1, 2012, see P.L. 122-2012 §§ 3–4, 2012 Ind. Acts 2157 (amending Ind. Code § 37-16-3-3 & -5), but those amendments have no bearing on our decision today.

4

Once the death certificate is filed, the local health officer must use the information thereon to "make a permanent record" that does not include the cause of death. Ind. Code § 16-37-3-9(a) (2008). The permanent record, with the exception of the decedent's Social Security number, "shall be open to public inspection." Ind. Code § 16-37-3-9(b). The local health officer must also report the death to the Indiana State Health Department within five days. Ind. Code § 16-37-1-3.1(e) (Supp. 2013).

Finally, upon request of a qualifying individual, the "local health officer shall provide a certification of birth, death, or stillbirth registration." Ind. Code § 16-37-1-8(a) (2008). The requesting party must demonstrate he has "a direct interest in the matter" and "the certificate is necessary for the determination of personal or property rights or for compliance with state or federal law." Id. Depending on the requesting party's preference, the local health officer has the discretion to include or omit "information concerning the cause of death." Ind. Code § 16-37-1-8(d) (2008).

## C. Rita Ward's Public Records Request

In June 2012, Rita Ward sent a letter to the Vanderburgh County Health Department requesting "copies of records created under IC [§] 16-37-3-3 maintained by the Vanderburgh County Health Department for the month of May, 2012." App. at 20. The Department denied her request, stating: "pursuant to I.C. [§] 16-37-1-10, in order to obtain a copy of a certificate of death, the purchaser must have a direct interest in the matter or the information must be necessary for the determination of a personal or property right or for the compliance with state or federal law." App. at 21. Indiana Code section 16-37-1-10(a) (2008) provides, in pertinent part:

> The records and files of the division of the state department concerning vital statistics are subject to this article and rules of the state department. Data contained in the records and files may be disclosed only as follows:
>
> (1) The state registrar shall permit inspection of the records or issue a certified copy of a certificate or part of a certificate only if the state registrar is satisfied of the following:

(A) That the applicant has a direct interest in the matter recorded.

(B) That the information is necessary for the determination of personal or property rights or for compliance with state or federal law.

. . .

(2) The state department may permit the use of data contained in vital statistical records for research purposes only, but no identifying use may be made of the data.

(3) In any extraordinary case that the state registrar determines is a direct tangible and legitimate public interest.

The Department's letter further stated Ward was free to come inspect any "permanent record" created pursuant to Indiana Code section 16-37-3-9(a). App. at 22. But permanent records do not contain cause of death information. See Ind. Code § 16-37-3-9(a) (specifying the content of a permanent record).

Ward sought an advisory opinion from the Public Access Counselor of the State of Indiana. The Counselor issued an opinion concluding the Department's denial of Ward's request was permissible, but one week later, he issued an amended opinion stating the opposite:

It should be noted that I.C. § 16-37-1-10 would only apply to records maintained by the State Department of Health. Thus, the Department could not deny your request pursuant to this section of the statute, as it is not a state department . . . . From what the law currently provides, while the State Department of Health could deny a similar request under I.C. § 16-37-1-10, the information as maintained by the local health department has not been afforded the same protections.

App. at 26–27.

The following day, the Evansville Courier & Press newspaper requested access to all Vanderburgh County death records dating from May 2012 that were "created under IC [§] 16-37-3-3." App. at 28. The Department denied that request, stating it did "not have any

6

documents to copy which would be responsive" because the Indiana Death Registration System "eliminated all paper copies and . . . is maintained solely by the Indiana State Department of Health." App. at 29. Thus, the Department claimed: "Under Indiana law, the County Health Department has no paper documents which it retains concerning I.C. [§] 16-37-3-3." App. at 29. The Department noted the Courier & Press was not qualified to request records pursuant to Indiana Code section 16-37-3-8, and suggested the Courier & Press direct its request to the State Department of Health. Of course, as the Courier & Press likely could not satisfy the requirements of Indiana Code § 16-37-1-10(a), any request it made to the State Department likely would have been fruitless.

Ward and the Courier & Press sued the Department to obtain access to the records they sought. They moved for summary judgment, arguing (1) Indiana Code section 16-37-3-3 required the Department to maintain a copy of each death certificate filed, (2) those death certificates were public records covered by the Indiana Access to Public Records Act, Ind. Code ch. 5-14-3, and (3) as there was no provision exempting the death certificates from APRA, the Department's denials of their requests were unlawful. The trial court denied their motion and instead entered judgment in favor of the Department, concluding:

> The language set forth in I.C. [§] 16-37-3-3 conflicts with the specific language in I.C. § 16-37-1-8 and I.C. § 16-37-1-10 regarding who may legally obtain a copy of a death certificate. However, the statutory provision requiring the retention of a permanent record of deaths by all health departments in Indiana, including the County Health Department pursuant to I.C. [§] 16-37-3-9, clearly demonstrates the Indiana General Assembly's intent to allow the public to inspect and copy certain death record information, but not "cause of death" information . . . unless the person seeking a copy of a death certificate can meet the statutory requirements set forth in I.C. § 16-37-1-8 or I.C. § 16-37-1-10.

App. at 14. The plaintiffs appealed, and in a published opinion, a unanimous panel of our Court of Appeals affirmed the trial court. Evansville Courier & Press v. Vanderburgh Cnty. Health Dep't, 993 N.E.2d 302, 306 (Ind. Ct. App. 2013).

We granted transfer.  Evansville Courier & Press v. Vanderburgh Cnty. Health Dep't, 2 N.E.3d 687 (Ind. 2014) (table); Ind. Appellate Rule 58(A).


**Standard of Review**


The trial court must grant a motion for summary judgment "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Ind. Trial Rule 56(C).  We review a trial court's ruling on a motion for summary judgment using that same standard, S. Shore Baseball, LLC v. DeJesus, 11 N.E.3d 903, 907 (Ind. 2014), and although the trial court's specific findings of fact and conclusions of law assist our review, they are not binding upon us.  Kesling v. Hubler Nissan, Inc., 997 N.E.2d 327, 331–32 (Ind. 2013).  Pure questions of law, like the issues of statutory construction we address here, are particularly appropriate for summary resolution, HDNet LLC v. N. Am. Boxing Council, 972 N.E.2d 920, 922 (Ind. Ct. App. 2012), trans. denied, 980 N.E.2d 322 (Ind. 2012) (table), and we review them de novo.  Moryl v. Ransone, 4 N.E.3d 1133, 1137 (Ind. 2014).


**Death Certificates Are Public Records and May Be Freely Obtained from the County Health Department.**


Appellants argue the trial court's ruling was erroneous because (1) although the Department claims it does not have the requested records, Indiana Code section 16-37-3-3 requires the Department to maintain a copy of each death certificate filed, and (2) those death certificates are "public records" subject to APRA and not covered by any statutory exemption.  We agree.

**A. County Health Departments Must Keep a Copy of Each Death Certificate Filed.**

In response to the Courier & Press's request for death certificates, the Department stated it could not produce the certificates because it did not have them. But Indiana law states "the physician last in attendance upon the deceased or the person in charge of interment shall use the Indiana death registration system established under IC 16-37-1-3.1 to file a certificate of death *with the local health officer* of the jurisdiction in which the death occurred," Ind. Code § 16-37-3-3(b) (emphasis added), and: "The local health officer shall *retain a copy* of the certificate of death." Ind. Code § 16-37-3-3(a) (emphasis added).

Thus, just as in 1881, each county health department has an unambiguous statutory obligation to collect and maintain death certificates. Then, of course, such records were written on paper, copied by hand, and filed in boxes or cabinets. Now, we have modernized the process; the records are typed on computers, viewed on screens, stored on a server, and printed out on machines. This change is one of form, however, not substance. The essence of the law—that the local health department must collect and maintain death certificates—remains the same regardless of the means used to comply with it. Therefore, if the Department truly does not have the death certificates, it is in violation of Indiana Code section 16-37-3-3(a).

**B. Death Certificates Are Public Records for the Purpose of APRA.**

Appellants contend death certificates, including the cause of death information thereupon, are public records and therefore subject to APRA, which provides: "Any person may inspect and copy the public records of any public agency during the regular business hours of the agency." Ind. Code § 5-14-3-3(a) (2010 & Supp. 2013). APRA is intended to ensure Hoosiers have broad access to most government records:

> A fundamental philosophy of the American constitutional form of representative government is that government is the servant of the people and not their master. Accordingly, it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. Providing

9

persons with the information is an essential function of a representative government and an integral part of the routine duties of public officials and employees, whose duty it is to provide the information. This chapter shall be liberally construed to implement this policy and place the burden of proof for the nondisclosure of a public record on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record.

Ind. Code § 5-14-3-1 (2010). Thus, we apply a presumption in favor of disclosure, and the burden rests upon the Department to rebut that presumption. Indianapolis Convention & Visitors Ass'n, Inc. v. Indianapolis Newspapers, Inc., 577 N.E.2d 208, 212 (Ind. 1991).

Both parties agree that Ward and the Courier & Press are "persons" and that the Department is a "public agency" as those terms are defined in APRA.[3] But the Department contends death certificates are not "public records" pursuant to Indiana Code section 5-14-3-3 but rather confidential records pursuant to Indiana Code section 5-14-3-4(a)(1), which exempts from disclosure any records "declared confidential by state statute." The Department cites two statutes it believes declare death certificates confidential: Indiana Code sections 16-37-1-8 and -10. We consider each in turn.

### 1. Section 8

Section 8 prohibits a local health officer from providing "a certification of . . . death . . . registration" unless the officer "is satisfied that the applicant has a direct interest in the matter" and "determines that the certificate is necessary for the determination of personal or property rights

---

[3] APRA defines "person" as, among other things, "an individual" or "corporation." Ind. Code § 5-14-3-2(*l*) (Supp. 2013). Ward is an individual, and the Courier & Press is the business name of the Evansville Courier Company, an Indiana corporation. APRA defines "public agency" as, among other things, "any board . . . [or] department . . . exercising in a limited geographical area the executive [or] administrative . . . power of the state or a delegated local governmental power." Ind. Code § 5-14-3-2(n). The Department, as a local health department, "operate[s] as an agency of local government administratively responsible to the appropriate county or city executive." Ind. Code § 16-20-1-2 (2008).

or for compliance with state or federal law." Ind. Code § 16-37-1-8(a) (2008).  Nearly forty years ago, however, our Court of Appeals—as fate would have it, in a case involving substantially the same parties we find before us today—concluded a death certificate is not the same as a certification of death registration.  Evansville-Vanderburgh Cnty. Dep't of Health v. Evansville Printing Corp., 165 Ind. App. 437, 441, 332 N.E.2d 829, 832 (1975).

In Evansville Printing, an Evansville Press reporter requested a death certificate from the Evansville-Vanderburgh County Department of Health.  Id. at 438, 332 N.E.2d at 830.  When his request was denied, he asked for a "Local Certified Record of Death . . . showing the cause of death."  Id.  The local official likewise refused to provide that record, claiming information concerning a decedent's cause of death was confidential.  Id. at 440, 332 N.E.2d at 831.  The Department then initiated a declaratory judgment action, and the trial court concluded the reporter's request should have been granted.  Id. at 438, 332 N.E.2d at 830.

The Department appealed, but a unanimous panel of our Court of Appeals affirmed the trial court.  Id. at 445, 332 N.E.2d at 834.  It concluded death certificates were "public records" for the purpose of the Hughes Anti-Secrecy Act, the predecessor to APRA.  Id. at 443, 332 N.E.2d at 833.  It also determined the death certificate and the certificate of death registration were two different documents.  Id. at 441, 332 N.E.2d at 832.  The upshot of this decision was that the Department had to give the newspaper a copy of the death certificate, which included the cause of death.[4]  Id. at 445, 332 N.E.2d at 834.

---

[4] When Evansville Printing was decided, Indiana law stated the "local health officer shall provide a certificate of birth, death, or stillbirth registration upon request by any person."  Evansville Printing, 165 Ind. App. at 441, 332 N.E.2d at 831 (quoting Ind. Code § 16-1-19-1 (1971) (repealed by P.L. 2-1993 § 209, 1993 Ind. Acts 1109)).  Accordingly, the Evansville Printing panel also held the Department had to give the newspaper a copy of the certificate of death registration, but that document did not have to contain cause of death information.  Id. at 444–45, 332 N.E.2d at 834.

We see no reason to reach a different conclusion today. As we read the statute, the General Assembly has drawn a distinction between a certificate of death, which is intended to record cause of death data for use by health officials, and a certification of death registration, which is intended to authenticate the death for the purpose of property disposition. The former is a public record, while the latter is confidential. And although his opinion is not binding upon us, we are gratified to note our reading is consistent with the Attorney General's interpretation of these statutes. Availability of Death Certificates and Information from those Certificates to the Public, 1998 Op. Ind. Att'y Gen. No. 1 (Jan. 5, 1998). Thus, we hold Section 8 does not operate to exempt death certificates from APRA's disclosure requirements.

## 2. Section 10

Section 10 prohibits the state registrar from permitting a member of the public to inspect or copy "the records and files of the division of the *state department* concerning vital statistics" unless the registrar is satisfied "the applicant has a direct interest in the matter recorded" and "the information is necessary for the determination of personal or property rights or for compliance with state or federal law." Ind. Code § 16-37-1-10(a)(1) (2008) (emphasis added). A plain reading of this language, however, demonstrates that it applies to the *State* Department of Health, not to local health departments. Thus, we hold Section 10 does not operate to exempt death certificates retained by local health departments from APRA's disclosure requirements.

Of course, this conclusion creates an apparent inconsistency. Under our holding today, "a death certificate request with no showing of direct interest or necessity made to the state registrar would be denied while that same request would be granted by a local health officer." Evansville Courier & Press, 993 N.E.2d at 305. But we cannot say with certainty that this madness has no method. The General Assembly could have intended to distribute the administrative burden of record production among local health departments rather than letting it fall solely upon the State Health Department. Indeed, it has done likewise with regard to other public records; any citizen may obtain criminal records from a county clerk, Ind. Code § 10-13-3-32 (2010), but he may not obtain those same records from the State Police unless he meets certain statutory criteria. Ind.

Code § 10-13-3-27(a) (2010 & Supp. 2013).  Accordingly, we decline the Department's invitation to ignore the plain language of the statute and second-guess the legislature's judgment.

*     *     *

In our society, death is an intimate and personal matter.  We recognize that public disclosure of the details of a decedent's death may cause pain to his family and friends.  We are also mindful of the importance of open and transparent government to the health of our body politic.  Our General Assembly has considered these competing interests and, insofar as we can determine, concluded that the public interest outweighs the private.  Indeed, in recent history, it has rejected three bills that would have exempted death certificates from APRA.  See H.B. 1067 § 11, 114th Gen. Assem., 2nd Reg. Sess. (Ind. 2006); H.B. 1551 § 9, 114th Gen. Assem., 1st Reg. Sess. (Ind. 2005); H.B. 1540 § 8, 113th Gen. Assem., 1st Reg. Sess. (Ind. 2003).  Even if we wished to rebalance the scales, it is beyond our power to do so.

## Conclusion

We reverse the trial court and remand this case for entry of summary judgment in plaintiffs' favor.  Upon remand, the trial court should also determine whether to award plaintiffs their attorney's fees and if so, how much.

Rush, C.J., and Dickson, Rucker, and David, JJ., concur.