

I N T H E

# Court of Appeals of Indiana

Family and Social Services Administration,

*Appellant-Respondent*

v.

Robert E. Saint,

*Appellee-Petitioner*



FILED
Jun 14 2024, 8:52 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

June 14, 2024

Court of Appeals Case No.
23A-MI-2742

Appeal from the Marion Superior Court

The Honorable Kurt M. Eisgruber, Judge

Trial Court Cause No.
49D06-2210-MI-35140

---

**Opinion by Judge Vaidik**
Judge May concurs.
Judge Mathias dissents with separate opinion.

**Vaidik, Judge.**

# Case Summary

[1] Robert E. Saint submitted a request under Indiana's Access to Public Records Act (APRA) to the Indiana Family and Social Services Administration (FSSA) to inspect and copy a "White Paper" that HealthNet, Inc., a private healthcare provider, had sent to FSSA trying to settle a dispute over how much HealthNet should be reimbursed by Medicaid. FSSA said the White Paper was excepted from disclosure under APRA's deliberative-material exception, Indiana Code section 5-14-3-4(b)(6), and Saint filed suit. The trial court ruled that FSSA had failed to meet its burden of proving that the White Paper was excepted from disclosure under the deliberative-material exception and ordered FSSA to produce it. FSSA now appeals.

[2] We hold that the deliberative-material exception in Section 5-14-3-4(b)(6) applies to communications (e.g., letters, memorandums, and emails) from one agency employee to another, if the communication consists of opinions or thoughts about a future agency decision. Applying this holding here, the exception does not apply because the White Paper was communicated by a private healthcare provider to a state agency. We therefore affirm the trial court's order that FSSA must produce the White Paper.

## Facts and Procedural History

[3] HealthNet is a Federally Qualified Health Center that provides services to patients enrolled in Medicaid. They own and operate medical clinics throughout Indianapolis. FSSA is the state agency that oversees Indiana's Medicaid program.

[4] HealthNet became "involved in settlement negotiations with FSSA regarding a dispute as to the availability of certain Medicaid supplemental wraparound payments" that HealthNet believed it was owed. Appellant's App. Vol. II p. 54. In March 2019, HealthNet's attorney prepared a legal memorandum, referred to as a "White Paper," that it submitted to FSSA's legal counsel for consideration during settlement negotiations.[1]

[5] In June 2022, while settlement negotiations between HealthNet and FSSA were still ongoing, Saint[2] submitted a request to FSSA to inspect and copy the White Paper under APRA. FSSA said the White Paper was excepted from disclosure under APRA. In October, Saint filed an action in Marion Superior Court seeking to compel FSSA to produce the White Paper. FSSA responded that the White Paper fell under two APRA exceptions: (1) the attorney-client privilege

---

[1] As of June 2023, settlement negotiations between HealthNet and FSSA were still ongoing. *See* Appellant's App. Vol. II p. 55. The record doesn't reveal whether a settlement has since been reached.

[2] Saint was substituted for the original plaintiff. Saint, an attorney, had represented two plaintiffs in federal false-claims and whistleblower actions against HealthNet. According to Saint, even though those cases were resolved, he, "as a member of the public," was interested in the White Paper. Tr. pp. 4-5.

under Indiana Code section 5-14-3-4(a)(1) and (a)(8)[3] and (2) the deliberative-material exception under Indiana Code section 5-14-3-4(b)(6).

[6] An oral argument was held in August 2023. Thereafter, the trial court ruled that FSSA had failed to meet its burden of proving that either exception applied. Following an in-camera review, the court ordered FSSA "to produce the 'White Paper' in its entirety within ten (10) business days." Appellant's App. Vol. II p. 12. FSSA moved to stay the ruling pending appeal, which the trial court granted.

[7] FSSA now appeals.

## Discussion and Decision

[8] FSSA contends the trial court erred by ordering it to disclose the White Paper to Saint under APRA. Because the trial court ruled on a paper record, our review of this issue is de novo. *See Sullivan v. Nat'l Election Def. Coal.*, 182 N.E.3d 859, 868 (Ind. Ct. App. 2022) (holding that when a trial court rules on a paper record, this Court is "in just as good a position on appeal as the trial court" to determine whether a document is excepted from disclosure under APRA).

[9] According to the opening section of APRA, "it is the public policy of the state that all persons are entitled to full and complete information regarding the

---

[3] FSSA does not rely on the attorney-client privilege on appeal.

affairs of government and the official acts of those who represent them as public officials and employees." Ind. Code § 5-14-3-1. "APRA is intended to ensure Hoosiers have broad access to most government records." *Evansville Courier & Press v. Vanderburgh Cnty. Health Dep't*, 17 N.E.3d 922, 928 (Ind. 2014). APRA is liberally construed to implement this policy, with the burden for nondisclosure on the public agency denying access. I.C. § 5-14-3-1; *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1196 (Ind. 2016).

[10] APRA provides that any person may "inspect and copy" "the public records of any public agency."[4] I.C. § 5-14-3-3(a). This, of course, is subject to several exceptions. *See* I.C. § 5-14-3-4. Some public records are "excepted" from disclosure and "may not be disclosed by a public agency." *See id.* at (a). These are called mandatory exceptions. *See Sullivan*, 182 N.E.3d at 867. Other public records are "excepted" from disclosure "at the discretion of [the] public agency." *See* I.C. § 5-14-3-4(b). These are called discretionary exceptions. *See Sullivan*, 182 N.E.3d at 867. On appeal, FSSA relies on the discretionary exception for "deliberative material":

> Records that are intra-agency or interagency advisory or deliberative material,[5] including material developed by a private

---

[4] There is no dispute that FSSA is a "public agency" and the White Paper is a "public record." *See* I.C. § 5-14-3-2(q) (defining "public agency" to include any "department," "division," "agency," or "office" "exercising any part of the executive . . . power of the state") & (r) (defining "public record" to include "any writing . . . received . . . by . . . a public agency").

[5] The dissent argues that in the phrase "intra-agency or interagency advisory or deliberative material," "intra-agency or interagency" modifies only "advisory material" and therefore "the deliberative material need not

contractor under a contract with a public agency, that are expressions of opinion or are of a speculative nature, and that are communicated for the purpose of decision making.

I.C. § 5-14-3-4(b)(6). The purpose of this exception is to prevent injury to the quality of agency decisions. *Sullivan*, 182 N.E.3d at 870. "The frank discussion of legal or policy matters in writing might be inhibited if the discussion were made public, and the decisions and policies formulated might be poorer as a result." *Id.* (quotation omitted).

[11] FSSA argues the "White Paper is an advisory or deliberative material that was provided to FSSA, and eventually used by FSSA to make a decision about whether and how to settle with HealthNet." Appellant's Br. p. 14. FSSA says the fact that it "received the document from another individual not associated with the agency . . . does not undermine the protection." *Id.* at 15. In support, FSSA relies on this Court's opinion in *Groth v. Pence*, 67 N.E.3d 1104 (Ind. Ct. App. 2017), *trans. denied*.

[12] There, in November 2014, the chief of staff to the Governor Elect of Texas Greg Abbott sent Indiana Governor Mike Pence a legal memorandum, referred to as a "white paper," prepared by a Texas deputy solicitor general about Texas's legal challenge to United States President Barack Obama's executive

---

be either intra-agency or interagency." Slip op. at 15. We disagree. Notably, FSSA does not make this statutory-interpretation argument on appeal.

orders on immigration. The next month, Governor Pence decided that Indiana would join Texas's lawsuit. William Groth, a private citizen, sought the white paper from Governor Pence under APRA. Governor Pence denied the request, claiming the white paper was excepted from disclosure as a privileged attorney-client communication under Section 5-14-3-4(a)(1) and (a)(8) and as deliberative material under Section 5-14-3-4(b)(6). Groth filed suit, and the trial court ruled that the white paper was protected from disclosure. Groth appealed.

[13] On appeal, a majority of this Court focused its analysis on whether the white paper was a privileged attorney-client communication under the common-interest doctrine, ultimately concluding that it was. *See Groth*, 67 N.E.3d at 117-22. Despite finding that the white paper was excepted from disclosure under this exception, the majority, almost as an afterthought, went on to address the deliberative-material exception. In a short analysis that arguably amounts to dicta, the majority concluded that the white paper was excepted from disclosure under this exception as well:

> The Governor used that record within his office, making it an intra-agency record.[6] And the white paper was an expression of legal opinion used by the Governor for the purpose of decision making. Accordingly, the Governor acted within his discretion

---

[6] On appeal, Governor Pence argued that the white paper, sent from one governor's office to another, was an "interagency" record. The *Groth* majority, however, did not discuss whether the white paper was an "interagency" record and instead found that it was an "intra-agency" record.

when he withheld the white paper under the deliberative material exception.

*Id.* at 1122. This author dissented:

> The majority also finds that the white paper is protected from disclosure as deliberative material. I disagree. Indiana Code section 5-14-3-4(b)(6) permits a public agency, in its discretion, to withhold from disclosure "[r]ecords that are intra-agency or interagency advisory or deliberative material . . . that are expressions of opinion or are of a speculative nature, and that are communicated for the purpose of decision making." The majority finds that the white paper is a protected "intra-agency" record. Although the white paper was not prepared by anyone within the Governor's office, the majority, without citation to authority, finds that it qualifies as an intra-agency record because Governor Pence "used" it within his office. I do not believe that a public agency can protect a record from disclosure as deliberative material just by "using" it.

*Id.* at 1124 n.13 (Vaidik, C.J., dissenting) (record citation omitted).

[14] FSSA says that *Groth* controls here and that "[s]o long as the document was a part of the agency's decision-making process, it is protected." Appellant's Reply Br. p. 5. Saint responds that this reading of the deliberative-material exception is too broad. That is, if Section 5-14-3-4(b)(6) meant that any record used by a public agency to make a decision was excepted from disclosure, the exception would swallow the policy of disclosure. *See* Appellee's Br. p. 21. We agree with Saint and decline to follow *Groth*.

According to Section 5-14-3-4(b)(6), the deliberative-material exception does not apply to just any record an agency uses to make a decision. Rather, it only applies to records that are (1) intra-agency or interagency deliberative or advisory material, including material developed by a private contractor under a contract with a public agency,[7] (2) expressions of opinion or of a speculative nature, and (3) communicated for the purpose of decision making. Reading these three requirements together, this exception applies to communications (e.g., letters, memorandums, and emails) from one agency employee to another, if the communication consists of opinions or thoughts about a future agency decision. Applying this here, the deliberative-material exception simply does not apply. Saint requested the White Paper, which was a legal memorandum communicated by HealthNet—a private healthcare provider and **not** a public agency—to FSSA. Had Saint sought communications from one agency employee to another about the White Paper, then the exception would apply. But that is not what Saint seeks.

---

[7] In its reply brief, FSSA makes an "[a]lternative[]" argument that HealthNet is a "private contractor" because "it contracts with the FSSA to provide services to patients enrolled in Medicaid." Appellant's Reply Br. p. 10. FSSA, however, did not make this argument in the trial court or in its opening brief and has therefore waived it. *See Safeco Ins. Co. of Ind. v. Blue Sky Innovation Grp., Inc.*, 230 N.E.3d 898, 907 (Ind. 2024) (holding that when an argument is not made in the trial court, appellate review of that argument is waived); *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005) (holding that an argument is waived if it is made for the first time in a reply brief).

Waiver notwithstanding, even if HealthNet contracts with FSSA to provide medical services to Medicaid patients, it did not contract with FSSA to produce the White Paper. Therefore, the White Paper is not "material developed" under HealthNet's contract with FSSA.

[16] FSSA also relies on *Unincorporated Operating Division of Indiana Newspapers, Inc., v. Trustees of Indiana University*, 787 N.E.2d 893 (Ind. Ct. App. 2003), *trans. denied*, for the proposition that "it does not matter who provides the document to the agency in order for the [deliberative-material] exemption to apply." Appellant's Br. p. 15. There, The Indianapolis Star sought records from the Trustees of Indiana University regarding their investigation into basketball player Neil Reed's allegations of inappropriate behavior against then-coach Bob Knight. The records, referred to as the "Reed materials," included:

> letters summarizing witness interviews, transcripts of interviews, notes taken during interviews, a letter from a witness, a memorandum prepared at [Indiana University Trustee John] Walda's request by a former student regarding Reed's allegations, and a document consisting of the names of witnesses for the Reed investigation, including notes made by the private investigator.

*Id.* at 898. The Indianapolis Star requested under APRA "copies of any notes taken during the course of the [Reed] investigation, information gathered during the course of the investigation and reports written as a result of the investigation." *Id.* at 899. The Trustees produced a "Summary Report" but denied access to the rest of the Reed materials. The Indianapolis Star sued the Trustees for access to the documents under APRA, and the trial court sided with the Trustees, finding that the Reed materials were exempted from disclosure under the deliberative-material exception.

[17]     On appeal, The Indianapolis Star argued that "the trial court erred in concluding that the Reed materials, in their entirety, constitute deliberative materials, and failing to differentiate between the factual and deliberative portions." *Id.* at 911.[8] According to The Indianapolis Star, the trial court "should have ruled that all purely factual matters contained in the Reed materials should be disclosed." *Id.* at 912. We found that APRA "requires a public agency to separate discloseable from non-discloseable *information* contained in public records," which "signaled" the legislature's "intention to allow public access to whatever portions of a public record are not protected from disclosure by an applicable exception." *Id.* at 913-14 (citing I.C. § 5-14-3-6(a)). Accordingly, we held that "[c]onsistent with the mandate of APRA section 6, any factual information which can be thus separated from the non-discloseable matters must be made available for public access." *Id.* at 914. We remanded the case with instructions for the trial court "to review the Reed materials in camera and determine what portions of the Reed materials contain factual materials not inextricably linked to non-discloseable materials and allow the Star access to such factual materials." *Id.*[9]

---

[8] Relying on federal law, The Indianapolis Star also argued that the trial court "failed to distinguish between those materials which were created before the decision to discipline Knight was made [which are privileged] and those materials which were created afterward [which are not] in an effort to support the decision already made." *Ind. Newspapers*, 787 N.E.2d at 910. We held that even if we applied federal law's pre- and post-decisional distinction, The Indianapolis Star would not prevail because it was undisputed that the Reed materials were created **before** the decision to discipline Knight was made. *Id.* at 911.

[9] We found that to the extent *Journal Gazette v. Board of Trustees of Purdue University*, 698 N.E.2d 826 (Ind. Ct. App. 1998), held that an entire document is "non-discloseable [if] it contains some speculative material or expressions of opinion," we declined to follow it. *Ind. Newspapers*, 787 N.E.2d at 913-14.

[18] Contrary to FSSA's argument, the issue in *Indiana Newspapers* was **not** "who provides the document to the agency." Rather, the issue was whether a portion of the materials should be disclosed under APRA as factual material. *Indiana Newspapers* does not control here.

[19] Moreover, our conclusion that the White Paper does not satisfy the deliberative-material exception because it was communicated by HealthNet—a private healthcare provider and **not** a public agency—is consistent with the federal Freedom of Information Act (FOIA). Like APRA, FOIA "mandates disclosure of records held by a federal agency, *see* 5 U.S.C. § 552, unless the documents fall within enumerated exemptions, *see* § 552(b)." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001). "[T]hese limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of [FOIA]." *Id.* at 7-8 (quotation omitted).

[20] FOIA's "Exemption 5," which is similar to APRA's deliberative-material exception, protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).[10] "To qualify, a document must thus satisfy two conditions: **its source must be a Government agency**, and it must fall within the ambit of a privilege against

---

[10] As one federal circuit court has observed, Exemption 5 "is the most used privilege and the source of the most concern regarding overuse." *Judicial Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49, 53 (D.C. Cir. 2021).

discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8 (emphasis added); *see also U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021) ("The privilege is rooted in the obvious realization that **officials will not communicate candidly among themselves** if each remark is a potential item of discovery and front page news." (quotation omitted, emphasis added)). Here, as explained above, the source of the White Paper is a private healthcare provider, not a public agency.

[21] FSSA has failed to meet its burden of proving that the White Paper is excepted from disclosure under the deliberative-material exception.[11] We therefore affirm the trial court's order that FSSA must disclose the White Paper to Saint.

[22] Affirmed.

---

[11] At the end of its appellant's brief, FSSA argues that its non-disclosure was appropriate under Indiana Code section 5-14-3-4(a)(8), which provides that public records "declared confidential by or under rules adopted by the supreme court of Indiana" are excepted from disclosure under APRA. Specifically, FSSA claims that "[c]ommunications that are part of confidential settlement negotiations are confidential under the rules of the Indiana Supreme Court. *See* Ind. Evidence R. 408; Ind. Alternative Dispute Resolution Rule 2.11." Appellant's Br. p. 18. But as Saint highlights, FSSA did not make this argument below and therefore cannot make it on appeal. *See Safeco*, 230 N.E.3d at 907. In its reply brief, FSSA does not respond to Saint's claim of waiver.

But even if FSSA did not waive this issue, the exception does not apply. Evidence Rule 408 provides that compromise offers and negotiations (including alternative dispute resolution) are not admissible at trial. Alternative Dispute Resolution Rule 2.11, in turn, governs mediation. This case does not involve a trial or mediation. We acknowledge FSSA's concern that "[a]bsent . . . an exemption," it and Federally Qualified Health Centers "could not work together on settlement negotiations due to the chilling effect of having their communications about legal opinions revealed to the public at large." *See* Appellant's Br. p. 17. That may be true, and we do not hold that negotiation documents like the White Paper shouldn't be exempt from disclosure. We simply hold that the exceptions FSSA invokes in this appeal do not apply.

May, J., concurs.

Mathias, J., dissents with separate opinion.

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Attorney General

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana


ATTORNEY FOR APPELLEE

Robert E. Saint
Emswiller, Williams, Noland & Clarke, LLC
Indianapolis, Indiana

**Mathias, Judge, dissenting.**

[23] I respectfully dissent and would reverse the trial court's order to disclose the white paper. As we stated in *Groth*,

> Indiana Code Section 5-14-3-4(b)(6) permits a public agency, in its discretion, to withhold from disclosure "[r]ecords that are intra-agency or interagency advisory *or* deliberative material, including material developed by a private contractor under a contract with a public agency, that are expressions of opinion or are of a speculative nature, and that are communicated for the purpose of decision making."

67 N.E.3d at 1122 (emphasis added). Here, the majority's analysis omits the italicized "or" that comes before deliberative material. The "or" means that deliberative material need not be either intra-agency or interagency. Rather, material that is merely deliberative (and an expression of opinion or of a speculative nature) is exempt from disclosure. *See id*.

[24] FSSA presented evidence that it had "considered" the white paper "in its determination of whether to settle with HealthNet, Inc., in the underlying litigation." Appellant's App. Vol. 2, p. 56. While the white paper was not created by someone within FSSA, that is not a requirement under Indiana Code section 5-14-3-4(b)(6). Rather, FSSA "used that record within [its] office, making it an intra-agency record." *See Groth*, 67 N.E.3d at 1122. And "the white paper was an expression of legal opinion used by [FSSA] for the purpose of decision making." *Id*. Accordingly, FSSA acted within its discretion when it withheld the white paper under the deliberative material exception. *See id*.

The burden thus shifted to Saint to demonstrate that FSSA's denial of his access to the white paper was "arbitrary or capricious."[12] I.C. § 5-14-3-9(g). But this, Saint did not do. Indeed, Saint makes no argument on appeal that FSSA's denial of access to the white paper was arbitrary or capricious. Instead, for the first time on appeal, Saint argues that FSSA was required to disclose the white paper because it does not fall under the exception in Indiana Code section 5-14-3-4(b)(5)(A). It is well-settled that a party may not present an argument to an appellate court unless the party raised that argument or issue to the trial court. *See GKC Indiana Theatres, Inc. v. Elk Retail Invs., LLC.*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002). Accordingly, I would not consider Saint's argument under Indiana Code section 5-14-3-4(b)(5)(A).

For all these reasons, I would hold that the trial court erred when it ordered FSSA to disclose the white paper.

---

[12] Saint argues that FSSA did not meet its burden under the statute because it "failed to designate any facts which would harm its deliberative process by disclosing the White Paper." Appellee's Br. at 16. But there is no such requirement under the statute.