v.

**STATE of Indiana, Appellee–Petitioner.**

**No. 49S02–0103–JV–144.**

Supreme Court of Indiana.

Oct. 7, 2002.

Ann M. Sutton, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet Parsanko, Deputy Attorney General Indianapolis, IN, Attorneys for Appellees.

## CIVIL TRANSFER

RUCKER, Justice.

### Summary

Under the juvenile determinate sentencing statute, a juvenile court may send a juvenile to the Department of Correction for a fixed term of two years provided, among other things, the juvenile has accumulated "two (2) unrelated prior adjudications of delinquency." We hold today that despite similar wording in the adult habitual offender statute, the meaning of the phrase in the juvenile context is that the earlier adjudications of delinquency are independent of the offense that is currently charged.

### Facts and Procedural History

The record shows that in the evening hours of June 9, 1999, sixteen-year-old N.D.F. and her fourteen-year-old accomplice severely beat a teenage victim after demanding money that the victim said she did not have. In due course, the State filed a petition alleging that N.D.F. was a delinquent child who had committed an act that would constitute attempted robbery as a Class B felony if committed by an adult. After a fact-finding hearing, the juvenile court adjudicated N.D.F. a juvenile delinquent. At the subsequent dispositional hearing, the trial court found that N.D.F. had a prior history of acts that would constitute felonies if committed by adults, namely: robbery as a Class C felony and possession of cocaine as a Class D felony. As a result, the trial court remanded N.D.F. to the custody of the Indiana Department of Correction for a fixed term of two years.

On appeal to the Court of Appeals, N.D.F. challenged the sufficiency of the evidence supporting the current charge and also contended that the State failed to present any evidence demonstrating that she had accumulated two unrelated prior adjudications of delinquency justifying her placement with the Department of Correction. The Court of Appeals rejected the sufficiency claim and affirmed the juvenile court on that point. However, relying on its earlier opinion in *W.T.J. v. State*, 713 N.E.2d 938 (Ind.Ct.App.1999), *trans. not sought*, the court determined that the sequential requirements of the adult habitual offender statute also apply to the juvenile determinate sentencing statute.[1] The court also determined that the juvenile court erred in sentencing N.D.F. because the State failed to present any evidence demonstrating that her two unrelated prior adjudications met the requirements of the statute. *N.D.F. v. State*, 735 N.E.2d 321, 324 (Ind.Ct.App.2000). As a result, the Court of Appeals affirmed in part and reversed in part the judgment of the juvenile court and remanded the cause for further proceedings. Having previously granted the State's petition to transfer, we

---

1. In that case, the Court of Appeals observed that the juvenile determinate sentencing statute does not define "two (2) unrelated prior adjudications of delinquency." Therefore, the court applied the same interpretation used for analogous wording in the adult habitual offender statute. *W.T.J.*, 713 N.E.2d at 941. Thereunder, before a trial court can enhance a defendant's sentence for his status as a habitual offender, the State must prove that he has "two (2) prior unrelated felony convictions." Ind.Code § 35-50-2-8(a) (West Supp.2002). That is, the State must prove the commission, conviction, and sentencing on the defendant's first offense preceded the commission of the defendant's second offense, and the commission of the defendant's principal offense followed the commission, conviction, and sentencing on the defendant's second offense. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind.1993).

now affirm in its entirety the judgment of the juvenile court.

### Discussion

Under the juvenile determinate sentencing statute, a juvenile may be remanded to the custody of the Indiana Department of Correction for housing in an appropriate correctional facility for up to two years provided, among other things: (1) the juvenile is adjudicated a delinquent because she committed a felony against another person; (2) the juvenile was at least fourteen years of age at the time the act was committed; and (3) the juvenile "has two (2) *unrelated prior adjudications of delinquency* for acts that would be felonies if committed by an adult." I.C. § 31–37–19–10(a)(3) (emphasis added).[2] A critical issue in this case is the meaning of the phrase "unrelated prior adjudications of delinquency." According to the Court of Appeals, it is analogous to the phrase "unrelated prior felony offenses" under the adult habitual offender statute. *N.D.F.*, 735 N.E.2d at 324. Accordingly, the State is required to prove that the commission, adjudication, and disposition of the juvenile's first offense preceded the commission of the juvenile's second offense, and the commission of the juvenile's principal offense followed the commission, adjudication, and disposition on the juvenile's second offense. Based on tenets of statutory construction, we disagree with our colleagues.

The goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. *Mayes v. State*, 744 N.E.2d 390, 393 (Ind. 2001). When interpreting the words of a single section of a statute, this Court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Park 100 Dev. Co. v. Ind. Dep't of State Revenue*, 429 N.E.2d 220, 222–23 (Ind.1981). Further, we will not read into the statute that which is not the expressed intent of the legislature. *Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc.*, 716 N.E.2d 943, 946 (Ind.1999). As such, it is just as important to recognize what the statute does not say as it is to recognize what it does say. *Clifft v. Ind. Dep't of State Revenue*, 660 N.E.2d 310, 316 (Ind.1995).

Our legislature has declared that it is the policy of this State and the purpose of our juvenile code to "ensure that children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation." I.C. § 31–10–2–1(5). This policy is grounded in the Progressive Movement of the late 19th and early 20th centuries, when American society rejected treating juvenile law violators the same as adult criminals in favor of individualized diagnosis and treatment. *State ex rel. Camden v. Gibson Cir. Ct.*, 640 N.E.2d 696, 697

---

**2.** The full text of the statute provides:
 (a) *This section applies to a child who:*
 (1) is adjudicated a delinquent child for an act that if committed by an adult would be:
 (A) a felony against a person;
 (B) a Class A or Class B felony that is a controlled substances offense under IC 35–48–4–1 through IC 35–48–4–5; or
 (C) burglary as a Class A or Class B felony under IC 35–43–2–1;
 (2) is at least fourteen (14) years of age at the time the child committed the act for which the child is being placed; and

 (3) has two (2) unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult.
 (b) A court may place the child in a facility authorized under this chapter for not more than two (2) years.
 (c) Notwithstanding IC 11–10–2–5, the department of correction may not reduce the period ordered under this section [].
 I.C. § 31–37–19–10.

(Ind.1994). Consequently, a juvenile court judge:

> must seek to instill in the child a sense of value, impart a feeling of security and belonging, communicate the importance and dignity of being a member of society and, hopefully, in this manner, prevent the child from pursuing a criminal and anti-social career. A juvenile court judge must, in a unique manner, establish a relationship that will permanently alter the behavior patterns of the child. He must have patience, understanding, and a genuine interest in the welfare of the child and must direct all of his efforts toward rehabilitation.

*Bible v. State*, 253 Ind. 373, 254 N.E.2d 319, 327 (1970) (citation omitted). To aid juvenile court judges, the legislature has put at their disposal "a myriad of dispositional alternatives to fit the unique and varying circumstances of each child's problems." *Madaras v. State*, 425 N.E.2d 670, 671 (Ind.Ct.App.1981). It is against this backdrop of flexibility that the legislature enacted the juvenile determinate sentencing statute, which recognizes that "[i]n some instances, confinement may be one of the most effective rehabilitative techniques available." *Id.* at 672.

By contrast, the purpose of the adult habitual offender statute is to penalize more severely those persons whom prior sanctions have failed to deter from committing felonies. *Marsillett v. State*, 495 N.E.2d 699, 705 (Ind.1986). In fact, "[p]unishment will be enhanced only when a person who has been given two distinct opportunities to reform persists in his criminality and commits a third separate and unrelated felony act thereby proving himself incorrigible and a most serious threat to our society." *Graham v. State*, 435 N.E.2d 560, 561 (Ind.1982). These concerns are not implicated in juvenile proceedings. For instance, the juvenile determinate sentencing statute is not equipped to deal with juveniles who are "a most serious threat to our society." Instead, the legislature has provided that these juveniles, who meet certain age requirements, are either automatically subject to the jurisdiction of an adult court or can be waived there. *See* I.C. § 31–30–1–4 (West Supp.2002); I.C. § 31–30–3–5.

In addition to the differences in the purposes of the statutes is the content of the statutes themselves. We find it significant that the adult habitual offender statute defines "two (2) prior unrelated felony convictions." The statute expressly provides:

> A person has accumulated two (2) prior unrelated felony convictions for purposes of this section only if:
>
> (1) the second prior unrelated felony conviction was committed after sentencing for the first prior unrelated felony conviction; and
>
> (2) the offense for which the State seeks to have the person sentenced as a habitual offender was committed after sentencing for the second prior unrelated felony conviction.

I.C. § 35–50–2–8(c) (West Supp.2002). There is no corollary definition of "two (2) unrelated prior adjudications of delinquency" in the juvenile determinate sentencing statute. Further, the adult habitual offender statute (1) requires the State to file a separate charging information that alleges that the defendant is a habitual offender; (2) puts the burden on the State to prove beyond a reasonable doubt that the defendant has accumulated two prior unrelated felony convictions; and (3) gives the defendant the right to a separate jury determination that he is a habitual offender. *See* I.C. § 35–50–2–8(a), (f), (g) (West Supp.2002). These procedural requirements are absent in the juvenile determinate sentencing statute.

 Construing "two (2) unrelated prior adjudications of delinquency" consistently with the spirit and purpose of the juvenile code and being cognizant of the significant differences between the statutes, we conclude that the legislature did not intend that the sequential requirements of the adult habitual offender statute apply to the juvenile determinate sentencing statute. Rather, we conclude the legislature intended to afford juvenile court judges greater flexibility in that regard. Accordingly, we hold that "two (2) unrelated prior adjudications of delinquency" simply means that the earlier adjudications of delinquency are independent of the offense that is currently charged.

 N.D.F. argued and the Court of Appeals agreed that the State produced no evidence demonstrating that her two unrelated prior adjudications met the requirements of the juvenile determinate sentencing statute. Rather, according to N.D.F., the State merely argued in its recommendation to the juvenile court that N.D.F. had accumulated two unrelated prior adjudications of delinquency. In essence, N.D.F. seemed to contend that just as with an adult alleged to be a habitual offender, here the State was required to prove beyond a reasonable doubt, through testimony or certified records, the existence of her alleged two prior adjudications. Again we disagree and conclude that the differences between the texts and purposes of the habitual offender statute versus the juvenile determinate sentencing statute compel a difference in the way in which two prior adjudications are determined.

 Rather than the habitual offender model, we believe that determining whether a juvenile has accumulated two prior adjudications is more akin to the procedure the trial court employs in sentencing a criminal defendant. That is, when sentencing a defendant, a trial court may consider as an aggravating circumstance that

the defendant "has a history of criminal or delinquent activity." I.C. § 35–38–1–7.1(b)(2) (West Supp.2002). Under this procedure, the trial court is merely required to make a finding, based on the evidence of record, that the defendant has such a history. And absent the defendant's "showing to the contrary, we will assume the trial court's finding is correct." *Noojin v. State*, 730 N.E.2d 672, 679 (Ind. 2000) (recognizing the trial court's finding that the defendant had a history of criminal activity that was supported by arguments of counsel and the Presentence Investigation Report). A similar procedure is appropriate here. A juvenile court can rely on arguments of counsel and the probation department's report when ordering fixed placement. If the juvenile makes a showing that she does not have two unrelated prior adjudications of delinquency, then the burden shifts to the State to produce evidence in support of its claim, and must do so by a preponderance of the evidence.

In this case, the record shows that at the dispositional hearing the State argued N.D.F. had accumulated two unrelated prior adjudications of delinquency for acts that would be felonies if committed by an adult. In addition, the juvenile court adopted as findings the report of its probation department, referred to as a "Preliminary Inquiry." The report showed that on August 20, 1997, pursuant to a plea agreement, the juvenile court entered a true finding against N.D.F. for possession of cocaine, a Class D felony if committed by an adult; and on October 20, 1997, also pursuant to a plea agreement, the juvenile court entered a true finding against N.D.F. for attempted robbery, a Class C felony if committed by an adult. R. at 16–17. Both adjudications were independent of the current offense and thus qualify as two unrelated prior adjudications of delinquency under the juvenile determinate

sentencing statute. At the dispositional hearing, N.D.F. did not dispute the existence of the prior adjudications. Rather, she requested leniency based on the facts surrounding the instant offense. Because N.D.F. made no showing contrary to the court's finding, we assume they are correct.

### Conclusion

We affirm the judgment of the juvenile court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.

