

**FILED**

Jul 08 2015, 10:27 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Morris L. Klapper
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

George M. Plews
Tonya J. Bond
Josh S. Tatum
Plews Shadley Racher & Braun, LLP
Indianapolis, Indiana

Lara D. Engelking
Engelking Law Group, LLC
Carmel, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

Virginia Tramill, Miah Gant,
Marquel Cheaney and Jeremiah
Tramill, the Mother and
Children
of Sara Tramill, Deceased,

*Appellant-Defendant,*

v.

Anonymous Healthcare
Provider,

*Appellee-Plaintiff.*

July 8, 2015

Court of Appeals Case No.
49A02-1408-CT-528

Appeal from the Marion Superior
Court
Cause No. 49D13-1308-CT-32116

The Honorable Timothy Oakes,
Judge

**Barnes, Judge.**

# Case Summary

Virginia Tramill, Miah Gant, Marquel Cheaney, and Jeremiah Tramill (collectively, "the Appellants") appeal the trial court's denial of their motion for declaratory judgment in a proposed medical malpractice action against Anonymous Healthcare Provider ("the Facility"). On cross-appeal, the Facility appeals various trial court orders related to medical review panel proceedings. We affirm in part and reverse in part.

# Issues

The Appellants raise one issue, which we restate as:

> I.     whether the trial court properly denied their request for declaratory judgment.

On cross-appeal, the Facility raises one issue, which we restate as:

> II.     whether we have authority to consider the trial court's rulings on various motions related to the medical review panel proceedings.

# Facts

On November 23, 2009, Sara Tramill, the daughter and mother of the Appellants, was in the care of the Facility following a stroke and died. A private autopsy was performed by Dr. E. Allen Griggs to determine the cause of Sara's death. Dr. Griggs determined that the cause of death was respiratory arrest due to "[a]spiration of blood and mucous into tracheo-bronchial tree and lungs[.]" Appellee's App. p. 101.

[4] In January 2011, the Appellants filed a proposed medical malpractice complaint alleging that the Facility negligently caused Sara's death. The Facility retained Dr. John Pless as an expert. Dr. Pless prepared a lengthy affidavit, which was critical of Dr. Griggs's autopsy and opined in part "that Dr. Griggs has not presented a clear and balanced autopsy report . . . . It is also my opinion that the reports have been specifically crafted by Dr. Griggs to meet the needs of the Plaintiff's theory in this lawsuit." *Id.* at 68-69.

[5] Attorney Don Morton was selected as the medical review panel chairman, and three doctors were selected to serve as the other panelists. It was later determined that, because the third panelist, Dr. Hawley, a forensic pathologist, was a close business associate of Dr. Pless, a new panelist would be selected to replace him.

[6] On September 6, 2013, correspondence from an attorney on behalf of Dr. Griggs advised the Facility's attorney of a potential defamation case against Dr. Pless based on portions of Dr. Pless's affidavit. On September 20, 2013, the Facility sought a preliminary determination of law requesting the ability to submit Dr. Pless's affidavit to the medical review panel with absolute immunity. The Appellants filed a cross-motion for preliminary determination of law on the issue of panel selection, specifically whether Dr. Hawley's replacement was required to be a forensic pathologist.

[7] On November 25, 2013, the trial court issued an order addressing all of the parties' outstanding motions.[1] As to the issue of Dr. Pless's immunity and the specialty of the third panelist the trial court ordered:

> 4. [The Facility's] Supplemental Motion for Preliminary Determination of Law Seeking Authorization To Submit Expert Affidavit Testimony to the Medical Review Panel and for Other Uses in Pending Litigation with Absolute Immunity is **DENIED AS PREMATURE** but the parties and their witnesses are reminded that civility in their respective professions is a precursor to credibility. Further, lack of civility can not only lend to loss of credibility, but worse. The Court is left with the impression that these witnesses have strayed outside their professional lines and beyond the control of their counsel. It needs to stop.
>
> 5. [The Appellants'] Cross Motion for Preliminary Determination of Law Regarding Panel Selection (specialist), dated October 15, 2013, is **DENIED**, but with the instruction to the panel chairman to follow the statutes and requisite framework in the selection of the medical review panel. The Court leaves it to the respective counsel to provide any guidance to the chairman of the medical review panel, Donald Morton.

*Id.* at 312.

[8] Because the other panel members did not timely select a replacement for Dr. Hawley, Chairman Morton selected Dr. Joseph Prahlow, a forensic pathologist, to replace Dr. Hawley. Although Chairman Morton informed the parties that

---

[1] Several other issues arose between the parties for which they sought guidance from the trial court. Because those issues are not relevant to this appeal, we do not address them. The Facility's voluminous appendix contains many duplicative and irrelevant documents and emails concerning those issues. We remind counsel that the purpose of an appendix is to present us with "only those parts of the record on appeal that are necessary for the Court to decide the issues presented." Ind. Appellate Rule 50(A)(1).

they would only be permitted to strike Dr. Prahlow for cause, the Appellants challenged Dr. Prahlow without cause.

[9] The parties sought guidance from the court regarding the Appellants' ability to challenge Dr. Prahlow's selection. On January 3, 2014, the trial court issued an order requiring Chairman Morton to comply with the Medical Malpractice Act ("the Act") in his selection of the third panelist. Based on this order, Chairman Morton reversed his earlier decision and allowed the Appellants to challenge Dr. Prahlow's selection. The Facility then challenged this decision in the trial court. On January 16, 2014, the trial court issued an order reiterating its instruction that Chairman Morton comply with the Act. The trial court also stated, "Further, the Court Orders the panel process proceed unobstructed without any further relief being sought from this Court." *Id.* at 8.

[10] On February 28, 2014, Chairman Morton selected Dr. Azita Chehresa, who apparently is not a forensic pathologist, as the third panelist. The parties continued to file motions with the trial court and, on March 3, 2014, the trial court issued an order on all outstanding motions on the issue of panel selection. The trial court denied the Facility's request to reinstate Dr. Prahlow and explained that it was leaving the decision as to how the panel selection process shall proceed in Chairman Morton's hands. In March 2014, while the selection process was still unresolved, Chairman Morton retired from the practice of law and resigned as the chairman of the panel.

On April 17, 2014, the Appellants filed a "Motion for Declaratory Judgment on Construction of Certain Statutes under the Indiana Medical Malpractice Act." Appellants' App. p. 141. The Facility objected to the motion on the basis the Declaratory Judgment Act did not apply. On May 2, 2014, the trial court summarily denied the Appellants' motion for declaratory judgment. On May 5, 2014, the Appellants renewed their motion for declaratory judgment, which the trial court denied. On May 27, the Appellants filed a motion to correct error, which the trial court denied after a hearing. The Appellants and the Facility now appeal.

## Analysis

### I. Declaratory Judgment

The Appellants assert that the trial court should have granted their motion for declaratory judgment and determined the proper method for selecting the third panelist.[2] The Uniform Declaratory Judgment Act is intended to furnish an adequate and complete remedy where none before had existed. *Hood's Gardens, Inc. v. Young*, 976 N.E.2d 80, 84 (Ind. Ct. App. 2012); Ind. Code §§ 34-14-1-1, 34-14-1-2. "The test to determine the propriety of declaratory relief is whether

---

[2] The Facility filed a motion to dismiss the Appellants' appeal, which the motions panel denied. In its Cross-Appellant's Reply Brief, the Facility raises the issue of the propriety of the Appellants seeking declaratory relief in a medical malpractice action. "The law is well settled that grounds for error may only be framed in an appellant's initial brief and if addressed for the first time in the reply brief, they are waived." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005). Because the Facility did not raise this issue in its Cross-Appellant's Brief, this issue is waived.

the issuance of a declaratory judgment will effectively solve the problem involved, whether it will serve a useful purpose, and whether or not another remedy is more effective or efficient." *Id.* "The determinative factor of this test is whether the declaratory action will result in a just and more expeditious and economical determination of the entire controversy." *Id.*

To say that the parties have filed repetitive motions regarding the selection of the third panelist is an understatement. Notwithstanding these motions, the composition of the medical review panel remains unresolved more than four years after the filing of the proposed complaint. Accordingly, because declaratory relief is appropriate, if not necessary, to resolve the parties' dispute regarding the selection of the third panelist and to facilitate the medical review panel process, the trial court should have granted the Appellants' motion.[3] *See Preferred Prof'l Ins. Co. v. W.*, 23 N.E.3d 716, 725 (Ind. Ct. App. 2014) *trans. denied* (concluding that separate declaratory judgment action associated with a proposed medical malpractice complaint was permissible and appropriate where it narrowed the issues and determined the path of the case); I.C. § 34-14-1-12 ("The purpose of this chapter is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.").

---

[3] It is our goal to provide clarity moving forward, not to revisit decisions made by Chairman Morton.

## A. Specialist

The parties disagree whether the third panelist must be a forensic pathologist. The Appellants assert there is no statutory requirement that the third panelist be a forensic pathologist. In support of their argument, the Appellants rely on Indiana Code Section 34-18-10-5, which provides:

> Except for health care providers who are health facility administrators, all health care providers in Indiana, whether in the teaching profession or otherwise, who hold a license to practice in their profession shall be available for selection as members of the medical review panel. Health facility administrators may not be members of the medical review panel.

In response, the Facility contends that the Act does not prohibit the parties from agreeing to a particular specialty and that the parties stipulated the third panelist would be a forensic pathologist. In support of this assertion, the Facility cites a portion of a July 2012 email from the Appellants' attorney stating, "we have no objection to the third panelist being a pathologist."[4] Appellee's App. p. 299.

"Stipulations have been defined as agreements between counsel respecting business before the court." *Truman v. Truman*, 642 N.E.2d 230, 235 (Ind. Ct. App. 1994). The email language establishes only that the Appellants would not object to the third panelist being a forensic pathologist. It does not establish that counsel agreed the third panelist would be a forensic pathologist and is not a stipulation. Thus, although the Appellants may have waived any objection to

---

[4] For this quote, the Appellees cite a pleading filed with the trial court quoting the email. The Facility did not provide us with the actual email upon which it relies.

the third panelist being a forensic pathologist, the quoted language does not require that the third panelist be a forensic pathologist.

[16] The Facility also argues that a forensic pathologist should be selected to evaluate the dispute between Dr. Griggs and Dr. Pless. Although a forensic pathologist might be helpful in resolving the dispute, the medical review panel functions in an informal manner to render its expert medical opinion. *See Griffith v. Jones*, 602 N.E.2d 107, 110 (Ind. 1992). In so doing, the panel "may consult with other medical authorities (including other physicians) and reports by other health care providers." *Sherrow v. GYN, Ltd.*, 745 N.E.2d 880, 884-85 (Ind. Ct. App. 2001) (citing I.C. § 34-18-10-21). Contrary to the Facility's assertions, the selection of a forensic pathologist is not the only means for resolving the contradictory conclusions reached by Dr. Griggs and Dr. Pless. Thus, neither the agreement of the parties nor the nature of the dispute between the parties' respective experts requires that the third panelist be a forensic pathologist.

### B. Challenges to Chairman Morton's Selection

[17] The parties also challenge the procedure for selecting the third panelist following Dr. Hawley's removal. Generally, a medical review panel consists of one attorney and three health care providers. I.C. § 34-18-10-3(a). The attorney member acts as the chairman of the panel in an advisory capacity and does not vote. I.C. § 34-18-10-3(b). The chairman "shall expedite the selection of the other panel members, convene the panel, and expedite the panel's review of the proposed complaint." I.C. § 34-18-10-3(c). The parties shall select a

chairman by agreement or, if no agreement can be reached, they may request the clerk of our supreme court to draw a random list of five qualified attorneys and strike names alternatively until one name remains. I.C. § 34-18-10-4.

[18] Regarding the selection of the other three panelists, "Each party to the action has the right to select one (1) health care provider, and upon selection, the two (2) health care providers thus selected shall select the third panelist." I.C. § 34-18-10-6. "Within fifteen (15) days after their selection, the health care provider members shall select the third member within the time provided and notify the chairman and the parties. If the providers fail to make a selection, the chairman shall make the selection and notify both parties." I.C. § 34-18-10-9.

[19] A selected panel member may be challenged as follows:

> Within ten (10) days after the selection of a panel member, written challenge without cause may be made to the panel member. Upon challenge or excuse, the party whose appointee was challenged or dismissed shall select another panelist. If the challenged or dismissed panel member was selected by the other two (2) panel members, the panel members shall make a new selection. If two (2) such challenges are made and submitted, the chairman shall within ten (10) days appoint a panel consisting of three (3) qualified panelists and each side shall, within ten (10) days after the appointment, strike one (1) panelist. The party whose appointment was challenged shall strike last, and the remaining member shall serve.

I.C. § 34-18-10-10.

[20] Here, after Chairman Morton was selected, each party selected a panel member and those panel members selected Dr. Hawley as the third panelist. Upon Dr. Hawley's removal from the panel because of his business relationship with Dr.

Pless, it was necessary to select his replacement.[5] Consistent with Indiana Code Section 34-18-10-6, Chairman Morton requested that the two party-selected panelists select Dr. Hawley's replacement. The two remaining panelists did not timely name a replacement, leaving the selection to Chairman Morton. *See* I.C. § 34-18-10-9. At issue is whether, as the Appellants assert, the parties are permitted to challenge Chairman Morton's selection pursuant to Indiana Code Section 34-18-10-10 or whether, as the Facility asserts, Chairman Morton's selection is final because Indiana Code Section 34-18-10-10 does not provide a mechanism for challenging his selection.

[21] "In applying a statute, our primary goal is to ascertain and give effect to the Legislature's intent." *Crowel v. Marshall Cnty. Drainage Bd.*, 971 N.E.2d 638, 645 (Ind. 2012). The best indicator of legislative intent is the statutory language. *Id.* at 646. Where the statute is clear and unambiguous, we apply it as drafted without resorting to the nuanced principles of statutory interpretation. *Id.* "Further, we will not read into the statute that which is not the expressed intent of the legislature." *N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind. 2002). "As such, it is just as important to recognize what the statute does not say as it is to recognize what it does say." *Id.*

---

[5] Indiana Code Section 34-18-10-12 allows for a panel member to be excused by the chairman for good cause but does not explain how that panelist should be replaced. Indiana Code Section 34-18-10-16(a) allows for the removal of a panelist by the chairman if the panelist is not fulfilling his or her duties. If a panelist is removed under Indiana Code Section 34-18-10-16, "a new member shall be selected under this chapter." I.C. § 34-18-10-16(b). Neither of these sections resolves the issue before us today.

[22] The Act requires the chairman to "expedite the selection of the other panel members" and to select the third panelist if the other two panel members fail to make a timely selection of a third panelist. I.C. §§ 34-18-10-3(c), 34-18-10-9. The Act explains how to replace a challenged party-selected panelist or a panel-member-selected panelist. I.C. § 34-18-10-10. The Act, however, is silent regarding the replacement of a chairman-selected panelist. *See id.* Thus, we conclude that the Legislature did not intend to allow challenges to a chairman-selected panelist.

[23] This is for good reason. Unlike panelists who are selected by the parties or by the party-selected panelists, the chairman is not acting on behalf of a party. Moreover, it is clear that the Legislature intended the medical review panel process to proceed expeditiously. *See, e.g.,* I.C. § 34-18-10-4(1) (explaining that the parties shall select a chairman within fifteen days after the request for the formation of the panel unless no agreement can be reached); I.C. § 34-18-10-9 (requiring the parties to select a panelist within fifteen days after the selection of the chairman and requiring the parties' panelists to select a third panelist within fifteen days); I.C. § 34-18-10-13 (requiring the panel to give its expert opinion within 180 days absent specific circumstances). Allowing parties to challenge a chairman-selected panelist would unnecessarily prolong the selection process only to end up with the same result—a panelist who was nominated by the chairman. The danger of unnecessary delay is evidenced by this case.

[24] For these reasons, we conclude that Indiana Code Section 34-18-10-10 does not apply to chairman-selected panelists. As it stands, Chairman Morton selected

Dr. Chehresa as the third panelist. We see no reason why this selection should not stand.

## II. Cross-Appeal

[25] On cross-appeal, the Facility challenges the trial court's 2013 denial of its request for a preliminary determination of law regarding immunity for Dr. Pless in a potential defamation action based on statements in his affidavit. The Facility also challenges the trial court's January 2014 and February 2014 orders denying its request to reinstate Dr. Prahlow.

[26] Our authority to exercise appellate jurisdiction is generally limited to appeals from final judgments. *Ramsey v. Moore*, 959 N.E.2d 246, 251 (Ind. 2012). Indiana Appellate Rule 2(H) defines final judgment and provides:

> **Final Judgment.** A judgment is a final judgment if:
>
> (1) it disposes of all claims as to all parties;
>
> (2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties;
>
> (3) it is deemed final under Trial Rule 60(C);
>
> (4) it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or
>
> (5) it is otherwise deemed final by law.

[27] The rulings challenged by the Facility did not dispose of all claims as to all parties. Regarding the request for a preliminary determination of law on the issue of Dr. Pless's immunity, the trial court's ruling does not resolve a *claim*

raised by any *party*. Instead, it is based on a potential defamation claim by Dr. Griggs against Dr. Pless, neither of whom is a party in the medical malpractice action between the Appellants and the Facility. Moreover the trial court's denials of the Facility's motion for preliminary determination of law and requests to reinstate Dr. Prahlow did not dispose of the larger medical malpractice case, which continued despite the trial court's ruling. Thus, the rulings challenged by the Facility are not final judgments pursuant to Appellate Rule 2(H)(1). *See Ramsey*, 959 N.E.2d at 253 (dismissing an appeal of trial court's order on a preliminary determination of law in a proposed medical malpractice complaint where the trial court's order did not dispose of all claims as to all parties).

[28] Further, the rulings challenged by the Facility were not made pursuant to Indiana Trial Rule 60(C), Trial Rule 59, and do not contain the "magic language" described in Appellate Rule 2(H)(2). Nor is there any indication that they are otherwise deemed final by law. Thus, the trial court's rulings are not final judgments pursuant to Appellate Rule 2(H).

[29] Finally, there is no indication that the Facility pursued a timely interlocutory appeal of the trial court's orders pursuant to Appellate Rule 14. Thus, we do not have authority to review the issues raised by the Facility on cross-appeal.[6]

---

[6] "[T]he lack of appellate jurisdiction can be raised at any time, and if the parties do not question subject matter jurisdiction, the appellate court may consider the issue sua sponte." *Georgos v. Jackson*, 790 N.E.2d 448, 451 (Ind. 2003).

*See Schriber v. Anonymous*, 848 N.E.2d 1061, 1065 (Ind. 2006) ("Not only is the trial court's ruling not appealable because it is not a final judgment, it is likewise not eligible for interlocutory appeal because it has not been so certified by the trial court pursuant to Indiana Appellate Rule 14(B).").

## Conclusion

[30] The trial court should have granted the Appellants' motion for declaratory judgment to facilitate the medical review panel process in this case. Regarding the specialty of the third panelist, although the Appellants agreed not to object to the selection of a forensic pathologist, they did not agree that only a forensic pathologist could be selected. Regarding challenges to the third panelist, Indiana Code Section 34-18-10-10 does not provide a method for challenging a chairman's selection. As for the Facility's cross-appeal, we do not have authority to review the challenged rulings because they were not final judgments. We affirm in part and reverse in part.

[31] Affirmed in part and reversed in part.

Riley, J., and Bailey, J., concur.