ATTORNEYS FOR APPELLANTS
James S. Stephenson
Rosemary L. Borek
Stephenson Morow & Semler
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Mickey J. Lee
Maurice Wutscher LLP
Indianapolis, Indiana

George W. Pendygraft
George W. Pendygraft, P.C.
Indianapolis, Indiana

FILED
Feb 08 2017, 12:07 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 49S02-1609-CT-481

CITY OF LAWRENCE UTILITIES SERVICE
BOARD, CITY OF LAWRENCE, INDIANA, AND
MAYOR DEAN JESSUP, INDIVIDUALLY AND IN
HIS OFFICIAL CAPACITY,

*Appellants (Defendants below),*

v.

CARLTON E. CURRY,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49D02-1212-CT-48783
The Honorable Timothy W. Oakes, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1506-CT-699

**February 8, 2017**

**Massa, Justice.**

The City of Lawrence's newly-elected mayor terminated the City's utility superintendent, Carlton Curry, after their differences in policy became apparent. Curry sued, claiming he was wrongfully discharged under the utility superintendent statute, he is owed unpaid wages under the

Wage Payment Statute, and the mayor tortiously interfered with his employment contract. The trial court granted summary judgment in favor of Curry on the wrongful discharge claim and in favor of the City on the Wage Payment Statute claim, but denied summary judgment on the tortious interference claim. We affirm the trial court in all respects.

**Facts and Procedural History**

After recommendation by then-Mayor Paul Ricketts, the City of Lawrence Utility Service Board ("USB") members voted unanimously in 2009 to appoint Carlton Curry as superintendent of Lawrence Utilities, the City's municipally owned water and sewer utility. Mayor Ricketts and Curry worked closely to manage the City's utilities and craft long-term policies and plans, including advocating for a wastewater treatment plant.

A little over two years later, Mayor Ricketts was defeated in the general election by Dean Jessup. Newly-elected Mayor Jessup and his transition team sent letters to department heads and Mayor Ricketts appointees inviting them to submit resumes and letters of interest, if they wished to be considered for retention. Among those sent correspondence was Curry, who submitted a letter and resume to Mayor Jessup and his team. Curry also personally communicated with Mayor Jessup and met with his transition team to give a presentation outlining his recommended strategic plans and initiatives.

Eventually, Mayor Jessup learned about the proposed wastewater treatment plant, but had concerns regarding the project's magnitude and cost. Mayor Jessup believed that Curry would attempt to convince him to commit to the project:

> If he and I disagreed, I would have to spend time and effort directing
> him to follow my objectives and would have to listen to him try to
> convince me to follow a different path. In the case of the wastewater
> treatment plant, he was clearly committed to going forward, while I
> had concerns and wanted to look into other options.

2

Appellant's App. at 139. These feelings led Mayor Jessup to conclude that Curry "would attempt to force his views on [him] rather than follow [his] lead" and may have to be replaced. Appellant's App. at 139.

After Mayor Jessup took office, he asked for the resignations of all prior mayoral appointees. Some refused, some resigned and were reappointed, and others were replaced, including the three USB members appointed by Mayor Ricketts. Mayor Jessup and Curry worked together some during the first few weeks after Mayor Jessup took office. However, Mayor Jessup continued to feel that Curry was trying to persuade him to adopt Curry's own policies and initiatives. Mayor Jessup, conversely, wanted a superintendent who would advocate for the mayor's views and objectives and give balanced advice. Ultimately, he believed these differences would result in conflict between him and Curry and understandably decided to replace him. Mayor Jessup then instructed the chairman of his transition team to inform Curry that his services were no longer needed. Curry was informed personally and via letter that he was terminated.

Thereafter, Curry filed a complaint in Marion Superior Court against the City[1] on state and federal law grounds. The case was removed to federal court, which granted summary judgment in favor of the City on all of Curry's federal claims, and remanded the remaining state law claims to Marion Superior Court. Curry moved for summary judgment on his wrongful discharge claim, while the City cross-moved for summary judgment on all claims. After a hearing, the trial court granted Curry's motion as to wrongful discharge, granted the City's motion as to defamation and back pay under the Wage Payment Statute, Indiana Code chapter 22-2-5 (2007), and denied summary judgment as to intentional interference. The City also moved for summary judgment in

---

[1] "The City" refers collectively to the USB, the City of Lawrence, and Mayor Jessup, individually and in his official capacity.

favor of Mayor Jessup in his individual capacity, which the trial court granted. The trial court certified its order for interlocutory appeal.

In a divided, published opinion, our Court of Appeals affirmed summary judgment in favor of the City as to the Wage Payment Statute, reversed the denial of summary judgment for the City on the intentional inference claim, reversed the grant of summary judgment in favor of Curry on the wrongful discharge claim, and remanded with instructions to grant summary judgment in favor of the City. City of Lawrence Utils. Serv. Bd. v. Curry, 55 N.E.3d 895, 899–902 (Ind. Ct. App. 2016). Curry sought transfer, which we granted, thereby vacating the opinion of the Court of Appeals. City of Lawrence Utils. Serv. Bd. v. Curry, 59 N.E.3d 251 (Ind. 2016) (table); Ind. Appellate Rule 58(A).

**Standard of Review**

"When reviewing the grant or denial of a motion for summary judgment we stand in the shoes of the trial court." SCI Propane, LLC v. Frederick, 39 N.E.3d 675, 677 (Ind. 2015) (internal quotation omitted). Summary judgment is appropriate only when "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). When "the challenge to summary judgment raises questions of law, we review them *de novo*." Rogers v. Martin, 63 N.E.3d 316, 320 (Ind. 2016) (citing Ballard v. Lewis, 8 N.E.3d 190, 193 (Ind. 2014)). Issues of statutory construction are questions of law, which are particularly appropriate for summary resolution. Evansville Courier & Press v. Vanderburgh Cty. Health Dep't, 17 N.E.3d 922, 927–28 (Ind. 2014) (citations omitted).

**Mayor Jessup Lacked Authority to Remove Curry as the Utility Service Board Superintendent.**

Curry argues that under Indiana Code section 8-1.5-3-5(d) (2016), which states, "[t]he superintendent may be removed by the board for cause at any time after notice and a hearing," the mayor lacked the authority to unilaterally remove him from his position as superintendent, relying primarily on Morrison v. McMahon, which found that "the utility service board alone, not the mayor, has the specific power to discharge the superintendent." 475 N.E.2d 1174, 1181 (Ind. Ct. App. 1985), trans. denied. The City responds that the court's analysis in Morrison is merely dicta and not binding, and moreover when canons of statutory interpretation are correctly applied, Indiana Code section 8-1.5-3-5(d) gave Mayor Jessup the authority to terminate Curry.

When interpreting a statute, our first task is to give its words their clear and plain meaning, while considering the structure of the statute as a whole. ESPN, Inc. v. Univ. of Notre Dame Sec. Police Dep't, 62 N.E.3d 1192, 1195 (Ind. 2016) (citing West v. Office of Indiana Sec'y of State, 54 N.E.3d 349, 353 (Ind. 2016)). "As we interpret the statute, we are mindful of both what it does say and what it does not say. To the extent there is an ambiguity, we determine and give effect to the intent of the legislature as best it can be ascertained." Id. at 1195–96 (internal citations and quotations omitted). We may not add new words to a statute which are not the expressed intent of the legislature. Kitchell v. Franklin, 997 N.E.2d 1020, 1026 (Ind. 2013); see also N.D.F. v. State, 775 N.E.2d 1085, 1088 (Ind. 2002) ("[W]e will not read into the statute that which is not the expressed intent of the legislature.").

While we agree that the statutory scheme relevant to Curry's termination is somewhat dense, it is neither inscrutable nor ambiguous. As to appointment powers, Indiana Code section 8-1.5-3-4(a)(3) provides that a utility service board may appoint a superintendent, "subject to" Indiana Code section 36-4-9-2 (2012). Section 36-4-9-2(a) then provides that the mayor shall appoint the department heads of certain departments "established under section 4 of this chapter." In relevant part, section 4 contains a list of specific departments a city may establish, and a catch-all provision that allows the mayor to establish "any other department considered necessary." Ind.

Code §§ 36-4-9-4(c)(1)–(7). Further, under Indiana Code section 36-4-9-2(a)(9), the mayor's "appointment of the head of the department is subject to the approval of any statutory board or commission established in the department, including and limited to: . . . the utility service board, if a department of utilities is established." As to removal powers, in addition to Indiana Code section 8-1.5-3-5(d), which is expressly limited to "the board," Indiana Code section 36-4-11-2(d) (2012) grants the mayor the authority to "suspend or remove from office any officers, deputies, or other employees of the city *appointed by* the executive or a prior executive, by notifying them to that effect and sending a written statement of the reasons for the suspension or removal to the city legislative body." (emphasis added).

Turning to the instant matter, Curry was appointed as superintendent of Lawrence Utilities by the USB, and not by former Mayor Ricketts. This alone seems to remove Curry from the statutory process contained in Indiana Code chapters 36-4-9 and 36-4-11 because the mayor may remove the department head when he or she is "*appointed by the executive or a prior executive.*" Ind. Code § 36-4-11-2(d) (emphasis added). But more decisively, there is no 'Department of Utilities' in the City of Lawrence, which is necessary to trigger the mayor's statutory removal authority as to Curry. Indiana Code section 36-4-9-2(a) states a department head may be appointed for "each department established under section 4 of this chapter." Section 4 does not specifically list a 'Department of Utilities,' so one would have had to been established as "any other department considered necessary." Ind. Code §§ 36-4-9-4(b), -(c)(7). The City of Lawrence has established nearly all the specifically-listed departments in Indiana Code section 36-4-9-4(c), including a Department of Administration, a Department of Finance, a Department of Law, a Department of Parks and Recreation, a Department of Public Safety, and a Department of Public Works. Compare Ind. Code § 36-4-9-4(c), with Lawrence, IN., Ordinances ch. 1-1-3. The City of Lawrence has also established at least one department not specifically listed, the Department of City Services. Compare Ind. Code § 36-4-9-4(c), with Lawrence, IN., Ordinances ch. 1-1-3. Absent from these established departments is a 'Department of Utilities.'

Lawrence Utilities is the municipally owned utility, which is overseen by the USB and operated by a superintendent appointed by the USB. Ind. Code § 8-1.5-3-4; Lawrence, IN.,

Ordinances § 1-1-3-13.  The USB was statutorily created, under Indiana Code section 8-1.5-3-3(a)(3), to control the city's municipally owned utilities.  Lawrence, IN., Ordinances § 1-1-3-13(A); see Ind. Code § 8-1.5-3-3.  Therefore, although a "department of utilities" is contemplated by Indiana Code section 36-4-9-2(a)(9), one has not been established in the City of Lawrence pursuant to Indiana Code section 36-4-9-4(c)(7).  Thus, the mayor could neither appoint the superintendent (with the board's approval) nor remove him under Indiana Code section 36-4-11-2(d).

Therefore, we return to Indiana Code section 8-1.5-3-4(a)(3), which provides that a utility service board may appoint a superintendent, and Indiana Code section 8-1.5-3-5(d), which states "the superintendent may be removed by the board for cause at any time after notice and a hearing." Given the clear and unambiguous meaning of this text, we determine that a superintendent may be removed *only* by the board and *only* after notice and a hearing.  There is no indication the legislature intended removal without cause or whether such a removal would require notice and a hearing.  To determine otherwise would require reading words into the statute on behalf of the General Assembly, which we shall not do.  See N.D.F., 775 N.E.2d at 1088.  Accordingly, Mayor Jessup lacked any statutory authority to remove Curry as superintendent.[2]

While this outcome may well offend sound public policy,[3] this Court has long noted and again recently reiterated that our job "is to interpret, not legislate, the statutes before [us]."  ESPN,

---

[2] The City also argues that the USB ratified the mayor's decision to terminate Curry by appointing his replacement.  Therefore, because the USB oversaw Curry's termination, he was not wrongfully terminated.  Removal by the USB, under Indiana Code section 8-1.5-3-5(d), provides that the board may remove the superintendent "for cause at any time after notice and a hearing."  Regardless of ratification, the facts are clear, Curry never received notice and a hearing.  Thus we reach the same result, Curry was wrongfully discharged.

[3] "History and long-prevailing practice across the country support the view that patronage hiring practices make a . . . substantial contribution to the practical functioning of our democratic system . . . ."  Elrod v. Burns, 427 U.S. 347, 388 (1976) (Powell, J., dissenting).  While there is wisdom in maintaining strong

Inc., 62 N.E.3d at 1200; Indiana Wholesale Wine & Liquor Co., Inc. v. State ex rel. Indiana Alcoholic Beverage Com'n, 695 N.E.2d 99, 107 (Ind. 1998) ("The judiciary is but one of three co-equal branches of government, each with its own powers and functions. The constitution empowers the legislative branch to make law; the judicial branch to decide cases."). Here, as written, Indiana Code section 8-1.5-3-5(d) gives the USB the exclusive power to discharge a superintendent for cause (who is not otherwise a department head under Indiana Code section 36-4-9-4) after notice and a hearing. Since that did not occur here, we affirm the trial court's grant of summary judgment in favor of Curry on the issue of wrongful discharge.

**Curry is Not Entitled to Wages Under the Wage Payment Statute.**

Curry also argues he is owed wages from the City because he was never properly terminated. In support of this argument, he claims he has "continued to perform under [his employment contract] by making himself 'available' (ready, willing and able) to perform his work as superintendent." Pet. to Trans. at 16. The City, however, notes the purpose of the Wage Payment Statute—"to prevent employers from profiting from employees' labor without timely payment"—is not at issue here because Curry has not actually worked since his purported termination, thus he is not entitled to wages. Response to Pet. to Trans. at 18.

We agree with the City. The purpose of the WPS is to prevent employers from stealing their employees' wages and profiting from their labor. See Ind. Code ch. 22-2-5 (2007). Therefore, the WPS provides that an employer must pay employees any unpaid wages, and employers who do not comply are subject to liquidated damages and attorney's fees. Ind. Code §§ 22-2-5-1, -2. It is clear from the record that Curry has not actually been working for the City

executive authority and the ability to appoint staff that share policy philosophy and loyalty, the proper place to amend subsection 5(d) is not with the appellate courts, but in the legislature.

since he was terminated. Although he claims he has been "ready, willing and able" to work, these sentiments do not entitle him to wages under the WPS. Thus, we find summary judgment in favor of the City was proper on this claim and affirm the trial court. See City of Clinton v. Golder, 885 N.E.2d 67, 76 (Ind. Ct. App. 2008) (finding a police officer was not owed wages under the WPS during time he was suspended because he did not "render labor or service").

### A Genuine Issue of Material Fact Exists Regarding Curry's Claim for Intentional Interference with an Employment Relationship.

Finally, Curry contends that because his employment contract existed between him and the USB, not him and Mayor Jessup, Mayor Jessup tortiously interfered with his employment contract by terminating him. Moreover, Curry claims any interference was not justified because Mayor Jessup lacked the authority to terminate Curry, thus his actions were neither fair nor reasonable. The City responds that it cannot interfere with the employment of its own employee. And the City further argues that if its actions do constitute interference, then they were justified because Mayor Jessup had legitimate reasons for replacing Curry.

We agree with the trial court that "[t]here exists a genuine issue of material fact as to whether [the City] intentionally and without a legitimate business purpose interfered with Curry's employment relationship." Appellant's App. at 454. Therefore, we affirm the trial court's denial of summary judgment in favor of the City on this claim.

### Conclusion

Based on the clear and unambiguous language of Indiana Code section 8-1.5-3-5(d), the USB had the sole authority to terminate Curry, after notice and a hearing. Any other method for termination is up to the legislature to determine as a matter of policy. With respect to Curry's

Wage Payment Statute and intentional interference with an employment relationship claims, we also affirm. Thus, we affirm the trial court in all respects.

Rush, C.J., and Rucker and Slaughter, JJ., concur.

David, J., concurs in part and dissents in part with separate opinion.

**David, J., concurring in part, dissenting in part.**

While I agree with the majority that Curry is not entitled to wages pursuant to the Wage Payment Statute and thus, the trial court should be affirmed on that issue, I write separately because I disagree with the majority's analysis on the other two issues: wrongful discharge and intentional interference with a business relationship. I would reverse the trial court on both issues.

As for Curry's wrongful discharge claim, I disagree with the majority's interpretation of the plain language of Ind. Code § 8-1.5-3-5. While the majority observes that we may not add new words to a statute which are not the expressed intent of the legislature (supra at *5), it nevertheless, adds the word "only" to the statute, not once but twice. It finds that there "is no indication the legislature intended removal without cause or whether such removal would require notice and a hearing." Supra at *7. However, I do not believe there's any indication that the legislature intended that a utility superintendent may only be removed by the board for cause and only after notice and a hearing. This is especially true in light of the majority's own observation that the result it reached "may well offend sound public policy." Supra at *7.

Turning to Curry's intentional interference with an employment relationship claim, because I believe that he was not wrongfully discharged, his intentional interference claim must also fail. That is, in order to prove his intentional interference claim, Curry must show: (1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship. Miller v. Cent. Indiana Cmty. Found., Inc., 11 N.E.3d 944, 961 (Ind. Ct. App. 2014). Lack of justification is established only if the defendant acted intentionally without a legitimate business purpose and the breach was malicious and exclusively directed to the injury and damage of another. Bilimoria Computer Systems, LLC v. America Online, Inc., 829 N.E.2d 150, 156-57 (Ind. Ct. App. 2005). Here, because I believe the mayor had the authority to terminate Curry at will, it cannot be said that he acted without a legitimate business purpose.

11

More than that, even assuming *arguendo*, that the mayor terminated Curry without proper authority pursuant to the statute, the record reflects he had legitimate business reasons for terminating Curry. That is, the mayor "wanted a superintendent who would advocate for [his] views and objectives and give balanced advice." <u>Supra</u> at *3. I believe the mayor had a justifiable reason for terminating Curry and thus, Curry's intentional interference claim fails. I would reverse the trial court on this issue.

In sum, I do not believe the plain language of the statute limits the mayor's ability to terminate the superintendent at will. I also do not believe that the mayor's actions were unjustified and thus, Curry cannot prove his claim for intentional interference with an employment relationship. As such, I respectfully dissent in part. I would reverse the trial court on both issues.