**VANDERBURGH COUNTY ELECTION BOARD, Appellant–Defendant,**

v.

**VANDERBURGH COUNTY DEMOCRATIC CENTRAL COMMITTEE, Appellee–Plaintiff.**

No. 82A01–0411–CV–480.

Court of Appeals of Indiana.

Aug. 31, 2005.

Leslie C. Shively, Shively & Associates, Evansville, IN, Attorney for Appellant.

Robert R. Faulkner, Stephanie S. Brinkerhoff Riley, Evansville, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

The Vanderburgh County Election Board appeals the decision of the trial court granting a declaratory judgment requiring the Board to include candidate numbers on ballot forms in future elections when using a voting system capable of displaying such numbers. Based on the clear and unambiguous meaning of the relevant statutory provision, we affirm the trial court's holding. Further, we find that the Board does not lack the power to assign candidate numbers despite the fact that the election statute does not specify a procedure for doing so.

### Facts and Procedural History

The Vanderburgh County Election Board ("Board") oversees elections in Vanderburgh County, Indiana. Its duties include formulation of the election ballot as well as coordinating with vendors regarding election supplies, materials, and equipment, including the electronic equipment and software used for voting machines. The Board utilizes the services of Electronic Systems & Software ("ES&S"), a provider of electronic voting systems. ES&S provides voting machines, software, and firmware to Vanderburgh County, as well as to numerous other counties in Indiana and nationwide.

Regarding election ballots, the Board creates and approves the ballot form, and ES&S enters that information, exactly as provided by the Board, into the voting machine. ES&S creates a sample file of the election ballot that is submitted to the Board for approval. At this point, the Board may require changes to the ballot form or it may approve the form. Once approved, the ballot information is pro-grammed into each voting machine that will be utilized by voters in a given election. Once the individual machines are programmed, it becomes impossible to make changes to the election ballot without starting this entire process over again. This would be a difficult and time-consuming process. *See* Tr. p. 65–66.

At the September 20, 2004, Board meeting, Board member Donald Vowels objected to the ES&S sample ballot on the grounds that it failed to comply with a state law requiring a ballot system to include numbers corresponding to candidate names if the system is capable of doing so. The sample ballot included candidate names but no candidate numbers. By a majority vote and over the objection of Vowels, the sample ballot was approved. ES&S programmed the voting machines according to the approved ballot, and Vanderburgh County opened its 2004 general election to absentee voters on October 4, 2004.

On September 27, 2004, the Vanderburgh County Democratic Central Committee ("Committee") filed a Complaint for Declaratory Judgment seeking interpretation of the statute regarding ballot numbers and seeking an order requiring the 2004 general election ballot to include numbers alongside candidate names. On October 14, 2004, the trial court held that the statute in fact does require numbers to be used where a system is capable of including them by any means. Further, because the 2004 election was already taking place via absentee balloting, the trial court ruled that the Board would be required to comply with the statute in all elections *after* the 2004 election, but that the Board would not be required to make any changes regarding the 2004 ballot.[1]

---

1. The trial court judge in the case was careful to construct his ruling so as to avoid any interference with the November 2004 election. Tr. p. 86, 87. The judge correctly ap-

The Board now appeals the trial court's interpretation of the statute.

### Discussion and Decision

■ The Board contends that the trial court erred in finding that the Vanderburgh County election ballot was not in compliance with Indiana Code § 3–11–15–13.1, which provides:

> If the voting system has the *capability*, the voting system *must* display on the medium used by the voter to cast the voter's ballot the following information for each candidate:
>
> (1) The name of the candidate.
>
> (2) *A ballot number* or other candidate designation uniquely associated with the candidate.

(emphasis added). This is the first time we have been called upon to address this statute.

With the ES&S system used by Vanderburgh County, a ballot number for each candidate must be manually programmed on the ballot in the same manner that ES&S enters candidate names on the ballot. Tr. p. 50–53. *See also* Pl.'s Ex. 1. The Board insists that because the ES&S system must have numbers manually entered and because there is no statutory or regulatory guidance available indicating the manner in which the Board should assign numbers, the "numbers" mandate contained in the statute can only apply to voting systems capable of *automatically assigning* numbers to candidates. Differently stated, the Board states that the ES&S system lacks the "capability," under the statute, of displaying numbers because numbers can only be inserted manually by ES&S rather than automatically assigned by the system software. Our resolution of this issue hinges on the definition of "capability."

■ Statutory interpretation is a question of law reserved for the court and is reviewed de novo. *In re K.J.A.*, 790 N.E.2d 155, 158 (Ind.Ct.App.2003). The cardinal rule of statutory construction is that if a statute is unambiguous, then we need not and cannot interpret it; rather, we must apply its plain and clear meaning. *Bolin v. Wingert*, 764 N.E.2d 201, 204 (Ind.2002); *Coplen v. Omni Rests., Inc.*, 636 N.E.2d 1285, 1287 (Ind.Ct.App.1994). Additionally, when construing a statute, the legislature's definition of a word binds us. *Ind. Office of Envtl. Adjudication v. Kunz*, 714 N.E.2d 1190, 1193 (Ind.Ct.App. 1999). When the legislature has not defined a word, we give the word its common and ordinary meaning. *Id.* In order to determine the plain and ordinary meaning of words, courts may properly consult English language dictionaries. *Id.*

The root of the word "capability" is, of course, "capable." Neither "capability" nor "capable" is defined anywhere in the Indiana Code. A dictionary definition of "capable" includes the following: "(1) Having capacity or ability; efficient and able; (2) Having the ability required for a specific task or accomplishment; qualified; (3) Having the inclination or disposition; (4) Permitting an action to be performed." *American Heritage Dictionary* (4th ed. 2000) (examples omitted).

---

plied Indiana Code § 3–11–15–54, which states that "[n]otwithstanding any other provision of this chapter, the software or source code of a voting system may not be changed while an election is being conducted or during the canvassing of the election's results." The trial court held that because the commencement of absentee balloting meant that an election was already "being conducted" in Vanderburgh County, the Board was not required to make any changes to the November 2004 election ballot. Tr. p. 86–87. This Court expressly agrees with the trial court's determination that the November 2004 election is unaffected by this lawsuit.

Here, it is uncontested that the ES&S system can be manually manipulated to include numbers next to candidates' names, though it cannot assign those numbers independently or automatically. *See* Tr. p. 86; *see also* Appellee's Br. p. 5–6; Appellant's Reply p. 4–5. Nowhere in the common and ordinary meaning of the word "capable" is there any suggestion that in order to be capable of something, one must be able to act in an automatic manner. Indeed, the definition listed above indicates that an action need only be *permitted,* or that a system need only have the *ability* to perform a function in order to meet the capability requirement. The ES&S software does *permit* the inclusion of numbers alongside candidate names. Alternatively, the system has the *ability* to display these numbers.

The Board also asserts that because it is not given statutory guidelines to follow regarding assignment, it lacks the power to assign candidate numbers. The Board's argument is flawed for two reasons. First, as the Committee points out, there also is nothing in Title 3 of the Indiana Code, which governs elections, that in any way prohibits or prevents an election board from assigning candidate numbers. Second, the Board fails to account for the fact that nowhere in Title 3 has the legislature granted power or guidance *of any kind* with regard to the procedure for assigning numbers. If the Board's reasoning were to be followed, no entity would be permitted to assign numbers, whether by an automatic process or otherwise. This reading of the statute would entirely abrogate the legislature's reference to numbers in Indiana Code 3–11–15–13.1. This interpretation is contrary to the basic tenet of statutory construction that we will strive to avoid a construction that renders any part of the statute meaningless or superfluous. *Wray v. State,* 751 N.E.2d 679, 683 (Ind.Ct.App.2001).

Because the ES&S voting system has the capability of displaying candidate numbers and because there is nothing in Title 3 of the Indiana Code that prevents an election board from assigning candidate numbers, the trial court correctly held that the Board must include candidate numbers on all future election ballots when using a system capable of displaying those numbers.

Judgment affirmed.

SHARPNACK, J., and RILEY, J., concur.