## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 24 2015, 10:31 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
| --- | --- |
| Mark D. Johnson | Matthew J. McGovern |
| Allen & Johnson, LLC | Anderson, Indiana |
| Salem, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| In Re the Marriage of: | July 24, 2015 |
| David P. Allen, | Court of Appeals Case No. 13A01-1411-DR-476 |
| *Appellant-Petitioner,* | Appeal from the Crawford County Circuit Court |
| v. | The Honorable Kenneth Lynn Lopp, Judge |
| Kimberly W. Allen, | Cause No. 13C01-0201-DR-9 |
| *Appellee-Respondent* | |

**Bailey, Judge.**

# Case Summary

[1] David P. Allen ("Father") appeals an order that he pay 100% of dental school tuition for Hunter Allen ("Hunter"), his youngest child with Kimberly W. Allen ("Mother"). We reverse and remand for further proceedings.

# Issues

Father presents a single, consolidated issue: whether the trial court's findings, conclusions, and order are clearly erroneous.[1] Mother cross-appeals, contending that statutory authority permitting an award for post-secondary educational expenses does not encompass graduate school expenses.

# Facts and Procedural History

Mother and Father were divorced in June of 2002. They agreed to share custody of their two children, and Father was to pay child support to Mother. On June 10, 2010, the parties submitted their agreement that basic child support would terminate and Father would be responsible for 100% of Hunter's undergraduate educational expenses, after deductions for scholarships. Mother was to provide health insurance.

On May 28, 2013, Father filed a petition for modification, advising the trial court that Hunter was contemplating a four-year post-graduate education in dentistry. He requested an order with respect to Hunter's post-graduation expenses.

Evidentiary hearings were conducted on June 17, 2014 and July 15, 2014. On October 9, 2014, the trial court entered its findings of fact, conclusions thereon,

---

[1] To the extent that Father attempts to challenge findings of fact, we observe that he has produced no transcript of evidence, from which we might discern if factual findings lacked an evidentiary basis.

and order. The trial court found that Hunter had extraordinary aptitude, having scored in the 97th percentile on the Dental School Admission Test. Her anticipated expenses of attending dental school were $75,524.62 annually. For the academic year of 2014-2015, Hunter had been offered loans of $61,320.00, of which she had accepted $40,500.00.

[6] The trial court found that Mother had assets of approximately $843,000.00 and weekly income of $1,692.84. With respect to Father, the trial court found that he had earned $101,216.00 in 2013, but was capable of generating income of $4,615.00 weekly. The trial court found that Father had "access to a significant amount of vehicles, real property, bank accounts, and business interests" including sixty real estate properties. (App. at 8.) Father's net worth was determined to be around two million dollars.[2]

[7] The trial court ordered that "the prior Agreed Order dated June 10, 2010 shall remain in effect"[3] and that Father "shall remain responsible for the cost of dental school, subject to any contribution by the daughter from loans, grants, scholarships and/or trust funds." (App. 16.) This appeal ensued.

---

[2] In summarizing the evidence, the trial court stated that the parents "jointly have income approximating $200,000.00 per year with a net worth in [sic] approaching of [sic] $3 million dollars." (App. at 15.) The court had valued Mother's assets at approximately $843,000.00; subtracting that amount from three million dollars yields a sum of $2,157,000.00.

[3] This portion of the order has no practical effect. The parents' prior agreement – adopted and incorporated into an order of the trial court – concerned only undergraduate expenses. Hunter had received her undergraduate degree and the obligations of the agreement were fully performed prior to the entry of the instant order.

# Discussion and Decision

## Standard of Review

[8] In Indiana, a court may enter an educational support order for a child's education at a post-secondary educational institution. Ind. Code § 31-16-6-2(a)(1). When a party challenges the trial court's order to pay higher education expenses, appellate review is for an abuse of discretion. *Carr v. Carr*, 600 N.E.2d 943, 945 (Ind. 1992). Where, however, as here, the contested issue is the trial court's apportionment of such expenses, we apply the clearly erroneous standard. *Id.*

[9] Findings of fact and conclusions of law entered pursuant to Indiana Trial Rule 52 invoke a two-tiered standard of review: we determine whether the evidence supports the findings, and whether the findings support the judgment. *Lovold v. Ellis*, 988 N.E.2d 1144, 1150 (Ind. Ct. App. 2013). The appellant must establish that the trial court's findings are clearly erroneous, that is, when a review of the record leaves us firmly convinced a mistake has been made. *Id.* However, we owe no deference to conclusions of law, and a judgment is clearly erroneous if it relies upon an incorrect legal standard. *Id.*

## Cross-Appeal

[10] As an initial matter, we address Mother's argument that a trial court is not authorized by statute to order parents to pay for their child's graduate school expenses. Her argument is two-fold, based upon her understanding of Indiana Code Sections 31-16-6-6 and 31-16-6-2.

[11] Indiana Code Section 31-16-6-6(c) provides that, if a court has established a duty to support a child in a court order issued before July 1, 2012, the parent, guardian, or the child may file a petition for educational needs until the child becomes twenty-one (21) years of age. Where an order has been entered after June 30, 2012, the cut-off age is reduced to nineteen. According to Mother, the reduction suggests a legislative preference against parental funding of graduate school.

[12] Indiana Code Section 31-16-6-2 provides that such an order for educational support may include "amounts for the child's education … at post-secondary educational institutions[.]" Mother urges that "post-secondary" should be defined with reference to other statutes (for example, the allowance of credit time in the criminal code for undergraduate degrees, I.C. § 35-50-6-3.3) and ultimately should be defined to include only undergraduate institutions.

[13] Statutory interpretation is a question of law reserved for the court in de novo review. *Vanderburgh Co. Election Bd. v. Vanderburgh Co. Democratic Cent. Comm.*, 833 N.E.2d 508, 510 (Ind. Ct. App. 2005). If a statute is unambiguous, we must apply its plain and clear meaning. *Id.* Additionally, a legislature's definition of a word binds us. *Id.* When the legislature has not defined a word, we give the word its common and ordinary meaning. *Id.* In doing so, courts may properly consult English language dictionaries. *Id.*

[14] Indiana Code Section 31-16-6-6(c) prescribes the timing of a petition for educational expenses, limiting the file date to that preceding a child's twenty-

first birthday. The provision contains no corresponding limitation on the permissible educational institution, although the Legislature would have been free to enact such a limitation. Mother, in essence, asks that we read in an express limitation to undergraduate expenses. We cannot do so, as courts "will not read into [a] statute that which is not the expressed intent of the legislature." *N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind. 2002).

[15] Indiana Code Section 31-16-6-2 permits an order for "post-secondary" educational expenses without providing a definition of "post-secondary." "Post," a Latin derivative used as a prepositional prefix, simply means "after." *Black's Law Dictionary* 1354 (10th Ed. 2014). "Secondary" includes that which is "subsequent." *Black's Law Dictionary* 1554 (10th Ed. 2014). Accordingly, the statutory provision at issue permits an order for that education which is subsequent to secondary education. There is no prohibition against inclusion of graduate school expenses. Again, we cannot read in such a prohibition. *N.D.F.*, 775 N.E.2d at 1088. The trial court did not lack statutory authority to enter an order for parental contribution to graduate school expenses.[4]

---

[4] This is not to say that an order for parental contribution to graduate school expenses is to be routinely entered. In considering parental contributions to a child's needs, courts of this State consider, among other things, "the standard of living the child would have enjoyed had the marriage not been dissolved." *Johnson v. Johnson*, 999 N.E.2d 56, 60 (Ind. 2013). In this case, the parents have estimated or potential annual income of at least $200,000.00 and estimated combined assets of at least three million dollars.

## Allocation of Educational Expenses

[16] Father argues that the trial court clearly erred by failing to enter an order that divided Hunter's graduate school expenses with, at a minimum, rough proportionality.[5]  We agree with Father.

[17] The trial court should take into consideration both income and the overall financial condition of the parents and the child.  *In re Marriage of Blanford*, 937 N.E.2d 356, 364 (Ind. Ct. App. 2010) (citing Indiana Child Support Guideline 8(b)).  In light of the income shares model of the Indiana Child Support Guidelines, proration based on income is to be expected in orders decreeing the payment of college expenses, absent a finding by the trial court that such proportionality would be unjust.  *Carr*, 600 N.E.2d at 946.  Our "statutes and our guidelines do not require apportionment based on precise parity, [but] they do require rough proportionality."  *Id.*  Here, the trial court found that both parents had significant income and assets, but ordered Father to pay educational expenses up to $75,524.62 per year while Mother was apparently to pay only health insurance.[6]

---

[5] Father also attempts to challenge the finding that he was capable of earning $240,000 per year.  However, lacking a transcript of the testimony, we are unable to ascertain whether the evidence supports this finding.

As for Father's challenge to the trial court's factual finding that Hunter had an $80,000 trust fund available for educational purposes, Mother agrees this represents scrivener's error, which should be corrected.

[6] The order does not specifically impose this requirement upon Mother.  However, it appears that she anticipates paying health insurance premiums for Hunter.  Generally, the payment of health insurance is in the nature of child support.  I.C. § 31-16-6-4.  In this case, it appears that Hunter's dental school requires its students to maintain health insurance, classifying it as a mandatory expense.

Also, although the trial court recognized that Hunter had loan and grant availability, and indicated that she "should" pursue loans and her anticipated indebtedness was not "unreasonable," (App. at 12.), the trial court stopped short of ordering that Hunter be responsible for a specific sum. Finally, the references to the disposition of trust funds are not entirely clear. It appears that the trial court contemplated some use of those funds by Hunter during her graduate school years. Although, by the terms of the trust, Hunter is apparently not to use trust funds for education if her parents are able to pay, she may be able to use those funds to reduce housing costs and personal expenses during graduate school.[7]

## Conclusion

We reverse and remand for a college expenses order appropriately apportioning the costs between Hunter, her father, and her mother.

Reversed and remanded.

Riley, J., and Barnes, J., concur.

---

[7] Exhibit J, "Schedule of Estimated [Annual] Costs" included "two months summer living expenses" of $3,000.00, "uninsured medical and dental" expenses of $1,000.00, "estimated vehicle expense" of $6,000.00, and "smart cell phone service" of $720.00. The program cost was estimated at $64,804.62.