## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 30 2017, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Sally Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of N.H. (Minor Child), and | June 30, 2017 |
| S.H. (Mother), | Court of Appeals Case No. 71A05-1702-JT-370 |
| *Appellant-Respondent,* | Appeal from the St. Joseph Probate Court |
| v. | The Honorable James N. Fox, Judge |
| The Indiana Department of Child Services, | The Honorable Graham Polando, Magistrate |
| *Appellee-Petitioner* | Trial Court Cause No. 71J01-1603-JT-14 |

**Crone, Judge.**

## Case Summary

[1] S.H. ("Mother") appeals two orders. Following the involuntary termination of her parental rights ("the Termination Order") to her child, N.H. ("Child"), Mother failed to file a timely notice of appeal with the Court of Appeals. However, she filed with the trial court a motion to file a belated notice of appeal. The trial court denied her motion, and Mother then filed a motion to correct error as to that denial. The trial court issued an order denying her motion to correct error ("Order Denying Motion to Correct Error"). Although Mother filed a timely notice of appeal of that order, we conclude that she waived her claim of error. Furthermore, we conclude that the trial court did not err in denying her motion to correct error. Accordingly, we affirm the Order Denying Motion to Correct Error.

[2] Mother also seeks to appeal the Termination Order. She argues that even though she forfeited her right to appeal, extraordinarily compelling reasons exist to restore her right to appeal. We agree and therefore address her appeal of the Termination Order on the merits. As to that order, Mother argues that the trial court clearly erred in concluding that there is a reasonable probability that the conditions that resulted in Child's removal or the reasons for placement outside Mother's home will not be remedied. Finding no error, we affirm the Termination Order.

## Facts and Procedural History

[3] In March 2006, Mother gave birth to Child. Child's father is deceased. In July 2014, Mother and Child were living in a homeless shelter. Mother was taken to a hospital because she was threatening to kill herself and another person who was living at the homeless shelter. The Indiana Department of Child Services ("DCS") removed Child because no caregiver was available to care for Child. DCS filed a petition alleging that Child was a child in need of services ("CHINS") because Mother suffered from depression, anxiety, and PTSD, had not been taking her medication, had threatened to kill another person, and had been admitted to the hospital due to her mental health instability. DCS Ex. A at 12-13. In August 2014, Mother admitted to the allegations in the CHINS petition, and the trial court adjudicated Child a CHINS. In September 2014, the trial court issued a dispositional decree requiring Mother to participate in reunification services.

[4] In March 2015, DCS filed a motion for emergency modification of dispositional decree requesting that Child be removed from Mother's home because of Mother's "increasingly irrational behaviors" and failure to comply with services including individual therapy over the past several months and because service providers were concerned with Child's well-being and safety. *Id*. at 60. Following a hearing, the trial court found that the material allegations and facts in DCS's motion for modification were true and ordered Child to be placed in foster care. *Id*. at 64. DCS then filed a modification of dispositional decree, requesting therapeutically supervised visits because Mother was no longer

engaging in services, DCS was concerned with her mental health, and Child was increasingly withdrawn during visitations and displaying intensifying behavioral problems outside of visitations. DCS also filed a progress report recommending a concurrent permanency plan for adoption of Child. In January 2016, the trial court ordered therapeutically supervised visitation and approved concurrent permanency plans of reunification and adoption.

[5] In March 2016, DCS filed a petition for involuntary termination of the parent-child relationship of Mother and Child. In May 2016, the trial court approved the permanency plan of adoption. In November 2016, the trial court held an evidentiary hearing on the termination petition. On January 2, 2017, the trial court issued its Termination Order, which found in relevant part as follows:

> [T]he immediate "conditions that resulted in the child's removal" were Mother's threats to harm the Child, which Mother conveyed to [the family case manager] in the Child's presence. The Magistrate finds a reasonable probability that Mother will not remedy that "condition."

> Pursuant to the dispositional decree mentioned above, Mother completed a Clinical Interview … with Dr. Alan Wax.

> ….

> Mother suffers from depression, generalized anxiety disorder, and a delusional disorder. Her conditions require her to take anti-psychotic and anti-depressive medications and engage in individual counseling.

> ….

[T]he case in which this Child was found to be in Need of Services began when Mother was hospitalized for her mental health condition …. At the time, Mother was residing with the Child at the homeless shelter, and had threatened to kill both herself and another resident. Once at [the hospital], she began stating the intake social worker there was "harassing" her.

More disturbingly, Mother contended at various points that [the family case manager], not [Child's deceased father], was this Child's Father. Mother also claimed that [the family case manager] wanted to marry her (Mother), that the Foster Parents were related to a Department Attorney, and that this Magistrate would cry after hearings because of his desire to return the child to the home. Needless to say, none of these are correct.

The Magistrate notes that Mother's therapist, Stephanie Compson, rejected the label "delusional" with respect to Mother, stating only that she seemed to display heightened "suspicion." Given the above, however, the Magistrate reiterates that he credits Dr. Wax's testimony, including his diagnosis of a delusional disorder.

Mother has a long and troubled history of mental health difficulties; the Magistrate credits Dr. Wax's summation of her pattern of engaging with mental health services, doing well for "a while," and then relapsing back into old behaviors. Despite her occasional engagement with treatment, Mother's symptoms have largely continued unabated–perhaps because her engagement has been so sporadic.

The Magistrate makes the finding above (that Mother's symptoms have largely continued unabated), despite finding, as she contended, that she has shown increased housing stability of late. The Magistrate finds that this housing stability, even if it

continues, pales in comparison to other, more profound sources
of instability, as in her mental health and employment.

….

[T]he Magistrate finds that [DCS] has established a reasonable
probability that the conditions resulting in the child's removal,
and continued placement outside the home, will not be remedied.

Appellant's App. Vol. 2 at 31-33.

[6] On January 12, 2017, the trial court found that Mother was indigent and appointed the Public Defender Program to represent her for purposes of appeal. The deadline for filing the notice of appeal of the Termination Order with the Court of Appeals was February 1, 2017. On February 3, 2017, Mother's appellate counsel filed a motion to file a belated notice of appeal with the trial court. *Id.* at 27. In it, appellate counsel stated that she had been under the mistaken impression that January 12, 2017, was the date of the Termination Order because that was the date on the order appointing counsel, and, although she received the order appointing counsel on January 13, 2017, she did not receive a copy of the termination order until a later unspecified date. *Id.* On February 6, 2017, the trial court denied Mother's motion to file a belated notice of appeal explaining that (a) the notice of appeal was required to be filed with the clerk of the Court of Appeals, (b) the trial court had the authority to grant belated motions for appeals only for discretionary interlocutory appeals (Indiana Appellate Rule 14(B)(1)(a)) and appeals from criminal convictions

(Indiana Postconviction Rule 2), and (c) it lacked the authority to grant Mother's request. *Id.* at 24.

[7] On February 9, 2017, Mother filed a motion to correct error as to the denial of her motion to file a belated notice of appeal, arguing that Postconviction Rule 2 governed her motion for belated notice of appeal and required her to file it in the trial court. *Id.* at 22. On February 10, 2017, the trial court issued its Order Denying Motion to Correct Error explaining again that Postconviction Rule 2 applies only to criminal appeals.

[8] On February 22, 2017, Mother filed her notice of appeal with this Court.

## Discussion and Decision

## Section 1 - The trial court did not err in denying Mother's motion to correct error.

[9] Mother appeals the Order Denying her Motion to Correct Error. She argues that the trial court erred in concluding that Postconviction Rule 2 did not provide it the authority to rule on her motion to file a belated notice of appeal. Mother fails to provide cogent argument, and therefore this issue is waived. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring that contentions in appellant's brief be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal); *Loomis v. Ameritech Corp.*, 764 N.E.2d 658, 668 (Ind. Ct. App. 2002) (failure to present cogent argument waives issue for appellate review*), trans. denied.*

[10] Waiver notwithstanding, Mother's argument is unavailing. In addressing her claim of error on the merits, we begin by noting that whether Postconviction Rule 2 applies to cases involving the termination of parental rights is a question of law, which we review de novo. *See Ind. Bureau of Motor Vehicles v. Watson*, 70 N.E.3d 380, 384 (Ind. Ct. App. 2017) (stating that where motion to correct error raises questions of law, appellate review is de novo). Postconviction Rule 2 applies to "eligible defendants" who, "but for the defendant's failure to do so timely, would have the right to challenge on direct appeal a conviction or sentence." Plainly, Mother is not an eligible defendant as defined by the rule. *See Vanderburgh Cty. Election Bd. v. Vanderburgh Cty. Democratic Cent. Comm.*, 833 N.E.2d 508, 510 (Ind. Ct. App. 2005) ("The cardinal rule of statutory construction is that if a statute is unambiguous, then we need not and cannot interpret it; rather, we must apply its plain and clear meaning."). We conclude that the trial court did not err in finding that Postconviction Rule 2 does not apply to termination cases and that it had no authority to grant Mother's motion to file a belated notice of appeal. Therefore, we affirm the Order Denying Motion to Correct Error.

## Section 2 – Extraordinarily compelling reasons exist to restore Mother's forfeited right to appeal the Termination Order.

[11] The Termination Order was issued January 2, 2017, but Mother failed to file a notice of appeal with the clerk of the Court of Appeals within thirty days of the of the entry of the order in the chronological case summary as required by Indiana Appellate Rule 9(A)(1). Therefore, her appeal is forfeited. Ind.

Appellate Rule 9(A)(5); *In re Adoption of O.R.*, 16 N.E.3d 965, 971 (Ind. 2014) ("[A]lthough a party forfeits its right to appeal based on an untimely filing of the Notice of Appeal, this untimely filing is not a jurisdictional defect depriving the appellate courts of authority to entertain the appeal."). Mother contends that even though she has forfeited her right to appeal, we should deviate from our appellate rules as permitted by Appellate Rule 1 and address the merits of her appeal.

[12] In support of her argument, Mother relies on *O.R.*, 16 N.E.3d 965, in which our supreme court declared that the right to appeal could be restored if there are "extraordinarily compelling reasons." *Id.* at 971. In *O.R.*, a father filed an untimely appeal of a judgment granting the adoption of his child to the child's foster parents. Although he requested the appointment of counsel before the deadline for the notice of appeal, the trial court did not appoint counsel until twenty-three days after the deadline had passed. In concluding that father's right to appeal should be restored, the *O.R.* court did not define "extraordinarily compelling reasons," but it stated that there were three reasons that father deserved to have his appeal heard on the merits. First, Appellate Rule 1 permits deviation from our rules. *Id.* at 972. Second, father attempted to perfect a timely appeal and his failure to do so was not his fault. *Id.* And third, "and perhaps most important," the *O.R.* court explained that the parent-child relationship was "'perhaps the oldest of the fundamental liberty interests'" and "'one of the most valued relationships in our culture.'" *Id.* (quoting *Troxel v.*

*Granville*, 530 U.S. 57, 65 (2000), and *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010)); *see also, e.g.*, *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016).

[13] Like *O.R.*, this case involves termination of parental rights. But in *O.R.*, the untimeliness of the filing of the notice of appeal was attributable to the trial court's delay in appointing counsel. Father sent a letter to the trial court for appointment of appellate counsel before the notice of appeal was due, but the trial court did not appoint O.R. counsel until "long after" the deadline for filing his notice of appeal had passed. 16 N.E.3d at 968, 972. Here, Mother's counsel was appointed on January 12, 2017, well before the notice of appeal was due on February 1, 2017. Mother's counsel states that she received a copy of the order appointing counsel on January 13 and that she thought that the date of the Termination Order was the same date as the order appointing counsel. She argues that she did not discover that the Termination Order had been issued earlier until she received a copy of the Termination Order on some later unspecified date. Rather than assuming that the dates of the orders were the same, Mother's counsel could have verified the date that the Termination Order was issued and noted in the chronological case summary. Nevertheless, there is no indication that Mother herself is at fault in any way, and counsel's actions do not diminish the high value our culture places on the parent-child

relationship or the fundamental liberty interests that are at stake.[1] Unless and until our supreme court further defines extraordinarily compelling reasons and we can discern its actual elements rather than merely looking at the result, we must conclude that termination of parental rights in combination with a contemporaneous if technically deficient effort to perfect an appeal constitute extraordinarily compelling reasons to restore the right to appeal. *See also Cannon v. Caldwell*, 74 N.E.3d 255, 257-59 (Ind. Ct. App. 2017) (discussing questions raised by *O.R,*. 16 N.E.3d 965, and concluding that child support modification order setting father's child support in clear violation of Indiana Child Support Guidelines constitutes an extraordinarily compelling reason to restore forfeited right to appeal). Accordingly, we will address Mother's appeal of the Termination Order on the merits.

## Section 3 –The trial court's conclusion that there is a reasonable probability that the conditions that resulted in Child's removal or the reasons for placement outside the home will not be remedied is not clearly erroneous.

[14] In appeals involving the termination of parental rights, we have long had a highly deferential standard of review. *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

---

[1] We acknowledge the general rule that a client is bound by her attorney's actions in civil proceedings. *See, e.g.*, *Weinreb v. TR Developers, LLC*, 943 N.E.2d 856, 867 (Ind. Ct. App. 2011) (concluding that Weinreb was bound by prior counsel's negligence and affirming denial of two motions for relief from judgment). However, given that our appellate rules permit us to restore a forfeited right to appeal, *see O.R.*, 16 N.E.3d at 972, it appears that justice may be best served by departing from the general rule where the nature of the right at stake is so important that it outweighs any sufficiently minor negligence of the attorney.

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. We consider only the evidence and reasonable inferences that are most favorable to the judgment. …. When reviewing findings of fact and conclusions of law entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. We will set aside the trial court's judgment only if it is clearly erroneous. A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment.

*In re G.Y.*, 904 N.E.2d 1257, 1260 (Ind. 2009) (citations, quotation marks, and brackets omitted).

[15] We observe that "although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008). Involuntary termination of parental rights is the most extreme sanction, and therefore "termination is intended as a last resort, available only when all other reasonable efforts have failed." *Id.*

[16] A petition to terminate a parent-child relationship involving a CHINS must allege, among other things:

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for

> placement outside the home of the parents will not be
> remedied.
>
> (ii) There is a reasonable probability that the continuation
> of the parent-child relationship poses a threat to the well-
> being of the child.
>
> (iii) The child has, on two (2) separate occasions, been
> adjudicated a child in need of services.

Ind. Code § 31-35-2-4(b)(2).

[17] DCS must prove by "clear and convincing evidence" each and every element set forth in Section 31-35-2-4(b)(2). *G.Y.*, 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. "'Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival.'" *Id.* (quoting *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005)). "'Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody.'" *Id.* (quoting *Bester*, 839 N.E.2d at 148).

[18] Mother challenges the trial court's conclusion that there is a reasonable probability that the conditions resulting in Child's removal or the reasons for placement outside the home would not be remedied. In reviewing this determination, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013). First, "we must ascertain what conditions led to [her] placement and retention in foster care." *Id.* Second, "we 'determine whether there is a reasonable probability that those conditions will

not be remedied.'" *Id.* (quoting *I.A.*, 934 N.E.2d at 1134). When the trial court makes its determination, it must evaluate a parent's fitness at the time of the termination hearing, taking into consideration evidence of changed conditions and balancing a parent's recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.*, 989 N.E.2d at 1231). "A court may properly consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). Also, the trial court may consider the services offered to the parent and the parent's response to those services. *Id.* The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[19] We note that Mother does not challenge any specific findings of fact, and therefore, we accept the trial court's findings as true. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."); *McMaster v. McMaster*, 681 N.E.2d 744, 747 (Ind. Ct. App. 1997) ("Father does not challenge these findings and we accept them as true."). Here, the trial court found that DCS initially removed Child from Mother in July 2014 because Mother was hospitalized after threatening to kill herself and another resident at the homeless

shelter where she and Child lived. In March 2015, the trial court ordered Child removed from Mother and placed in foster care because Mother threatened to harm Child and made such threats to the family case manager while Child was present. The trial court found that Mother had a long and troubled history of mental health difficulties and credited Dr. Wax's testimony that Mother was suffering from a delusional disorder and had a pattern of improvement and relapse. The trial court found that "despite her occasional engagement with treatment, Mother's symptoms had largely continued unabated." Appellant's App. Vol. 2 at 32. Thus, the trial court found that there was a reasonable probability that the conditions resulting in Child's removal or the reasons for placement outside the home would not be remedied.

[20] Mother argues that she has stabilized her home life and shown improvement in her mental health and counseling. She notes that she has been living in a two-bedroom apartment for over a year and that DCS visited her home prior to trial and found it appropriate. She also notes that her counselor testified that she was doing "pretty well" and making progress in her individual counseling and at group therapy. Tr. at 55, 61. She also argues that the trial court gave too much weight to the testimony of Dr. Wax and not enough to her counselor. Mother's argument is merely a request to reweigh evidence and judge witness credibility, which we must decline. *See G.Y.*, 904 N.E.2d at 1259.[2] We

---

[2] To the extent that Mother argues that the trial court erred in concluding that the continuation of the parent-child relationship poses a threat to Child's well-being, the claim is waived because she fails to support it with cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a); *Loomis*, 764 N.E.2d at 668.

conclude that the trial court did not clearly err in concluding that there is a reasonable probability that the conditions resulting in the removal of Child from Mother's home would not be remedied. Therefore, we affirm the Termination Order.

[21] Affirmed.

Baker, J., and Barnes, J., concur.