

ATTORNEYS FOR APPELLANT

Ann Marie Waldron
Waldron Law, LLC
Indianapolis, Indiana

Michael E. Simmons
Hume Smith Geddes Green
   & Simmons, LLP
Indianapolis, Indiana

Deidra N. Haynes
The Law Office of
   Deidra N. Haynes LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Emily Edmundson
Des Moines, Iowa

# IN THE
# COURT OF APPEALS OF INDIANA

Paula Henderson,

*Appellant-Plaintiff,*

v.

New Wineskin Ministries
Corporation,

*Appellee-Defendant*

December 28, 2020

Court of Appeals Case No.
20A-CT-1317

Appeal from the
Marion Superior Court

The Honorable
Heather Welch, Judge

Trial Court Cause No.
49D01-1801-CT-1943

**Vaidik, Judge.**

# Case Summary

[1]  Indiana Code section 34-31-7-2 lays out the duties owed by nonprofit religious organizations to persons who enter their premises. As to those entering the premises with permission, such organizations owe only two duties: (1) to warn of hidden dangers and (2) to refrain from intentionally harming them. In January 2017, Paula Henderson slipped and fell in the parking lot of New Wineskin Ministries Corporation ("New Wineskin"). Henderson sued New Wineskin for negligence. New Wineskin moved for summary judgment, which the trial court granted, finding under Section 34-31-7-2 that New Wineskin is not liable because Henderson's fall was not caused by a hidden danger.

[2]  Henderson now appeals, arguing the statute does not apply and, even if it did, there is a genuine issue as to whether her fall resulted from a hidden danger. We affirm, concluding "premises" as used in Section 34-31-7-2 includes parking lots and the undisputed evidence shows the danger that caused Henderson's injury was not hidden.

# Facts and Procedural History

[3]  On January 29, 2017, Henderson and her son, James, drove to New Wineskin to attend the morning service. New Wineskin is a church in Indianapolis, and Henderson had attended services there. While driving to New Wineskin, Henderson saw "it was snowing" and there was "about 2 inches" of snow on the ground. Appellant's App. Vol. II pp. 120, 121. Henderson was aware roads

and parking lots "might be slippery when it's been snowing." *Id.* at 121. New Wineskin's parking lot "hadn't been treated" and was "covered" in snow and ice. *Id.* at 122, 170. However, Henderson stated the parking lot did not "look slippery" to her. *Id.* at 123. She parked in a handicapped parking spot directly in front of the church doors. When Henderson stepped out of the car, James warned her it was slippery. She then took two steps toward the front of the car and fell, injuring her shoulder, back, and neck.

[4] In January 2018, Henderson filed a complaint, alleging New Wineskin's negligence caused her injuries. Two years later, New Wineskin moved for summary judgment, arguing there was no genuine issue of material fact as to the breach of any statutory duty laid out in Section 34-31-7-2. Following a hearing, the trial court granted New Wineskin's motion, finding no breach occurred under the statute because Henderson was aware of the snow and ice in the parking lot before she fell.

[5] Henderson now appeals.

## Discussion and Decision

[6] We review summary judgment de novo, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Summary judgment is rarely

appropriate in negligence cases because such cases are particularly fact-sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence. *Kramer v. Catholic Charities of Diocese of Fort Wayne-S. Bend, Inc.*, 32 N.E.3d 227, 231 (Ind. 2015). Nevertheless, a grant of summary judgment is clothed with a presumption of validity, and the appellant must demonstrate the trial court erred. *Id.*

## A. Statutory Interpretation

Henderson first argues Section 34-31-7-2 does not apply because a parking lot is not part of the "premises" as envisioned under the statute. Instead, she contends the trial court should have applied traditional premises-liability law. Section 34-31-7-2 provides, in part:

> Except as provided in section 3 of this chapter,[1] a nonprofit religious organization has only the following duties concerning persons who enter premises owned, operated, or controlled by the nonprofit religious organization and used primarily for worship services:
>
> > (1) If a person enters the premises with the actual or implied permission of the nonprofit religious organization, the nonprofit religious organization has a duty to:
> >
> > > (A) warn the person of a hidden danger on the premises if a representative of the nonprofit

---

[1] Section 3 lists the duties nonprofit religious organizations owe to those "enter[ing] the premises for the purpose of receiving fee based childcare services[.]" Ind. Code § 34-31-7-3. It does not apply to the facts of this case.

> religious organization has actual knowledge of the hidden danger; and
>
> (B) refrain from intentionally harming the person.

There are no Indiana cases interpreting Section 34-31-7-2 or defining the term "premises" under it. Henderson argues the plain language of the statute indicates it applies only to buildings, and points to the definition provided in Indiana Code section 34-31-7-3—the next section in the chapter—which limits "premises" to "a part of a building[.]" We disagree.

[8]   Henderson's argument requires us to interpret the meaning of "premises" as it is written in Section 34-31-7-2. Statutory interpretation is a question of law and is reviewed de novo. *Town of Darmstadt v. CWK Investments-Hilldale, LLC*, 114 N.E.3d 11, 13 (Ind. Ct. App. 2018), *trans. denied*. "[I]f a statute is unambiguous, then we need not and cannot interpret it; rather, we must apply its plain and clear meaning." *Vanderburgh Cnty. Election Bd. v. Vanderburgh Cnty. Democratic Cent. Comm.*, 833 N.E.2d 508, 510 (Ind. Ct. App. 2005). When construing a statute, the legislature's definition of a word binds us. *Id.* But if the legislature has not defined a word, we give the word its common and ordinary meaning. *Id.*

[9]   The legislature did not define "premises" in Section 34-31-7-2. Henderson argues the language in Section 34-31-7-2—specifically the word "enters" and the phrase "used primarily for worship services"—does not apply to a parking lot and therefore the statute did not mean for parking lots to be considered part

of the premises. But Henderson does not explain why one could not "enter" a parking lot. And while it appears worship services were not conducted in the parking lot, the premises as a whole were used primarily for worship services, which is all that is required under the statute. *See* Appellant's App. Vol. II p. 78.

[10] Henderson further argues the definition of "premises" provided in Section 3 shows "the word 'premises' to mean a building." Appellant's Br. p. 9. Section 3, which gives the duties owed by nonprofit religious organizations while providing fee-based childcare services, provides: "As used in this section, 'premises' means **a part of a building** that is: (1) used primarily for worship services; (2) owned, operated, or controlled by a nonprofit religious organization; and (3) used for purposes of providing childcare services for which a fee is charged." Ind. Code § 34-31-7-3 (emphasis added). But the legislature did not apply this definition to Section 2 or the statute as a whole despite "know[ing] how to apply a statutory definition broadly." *Rainbow Realty Group, Inc. v. Carter*, 131 N.E.3d 168, 174 (Ind. 2019). Instead, this definition appears only in Section 3 and specifies it applies to the term "premises" "as used in this section[.]" I.C. § 34-31-7-3(a). As such, we infer the legislature did not intend to apply this limited definition of "premises" outside Section 3. *See Rainbow Realty Group*, 131 N.E.3d at 174 (declining to import the relevant definition from elsewhere in the statute); *Montgomery v. State*, 878 N.E.2d 262, 266 (Ind. Ct. App. 2007) (giving a term its "common and ordinary meaning" despite it being defined in other sections of the Indiana Code).

We thus look to the ordinary meaning of "premises." *See Ind. Ins. Co. v. Dreiman*, 804 N.E.2d 815, 820 (Ind. Ct. App. 2004) ("The term 'premises' is unambiguous."), *trans. denied*. Black's Law Dictionary defines "premises" as a "house or building, **along with its grounds**[.]" *Black's Law Dictionary* 1371 (10th ed. 2019) (emphasis added). This definition follows our premises-liability jurisprudence, as we have generally considered a parking lot to be included in the term "premises." *See Certa v. Steak 'n Shake Operations Inc.*, 102 N.E.3d 336, 341 (Ind. Ct. App. 2018) (finding restaurant owed a duty to patron injured in their parking lot under premises liability), *trans. denied*; *Lutheran Hosp. of Ind., Inc. v. Blaser*, 634 N.E.2d 864, 870 (Ind. Ct. App. 1994) (finding hospital used "its premises, the parking lot, in such a way to affect the risk of injury of its invitees"), *reh'g denied*.

Because New Wineskin is a nonprofit religious organization whose premises are used primarily for worship services and Henderson's injury occurred on the premises, the trial court did not err in applying Section 34-31-7-2.

## B. Hidden Danger

Henderson also argues summary judgment was improper because a genuine issue of material fact exists over whether she was injured by a hidden danger on New Wineskin's premises. As noted above, the statute limits the duties New Wineskin owes to those who enter the premises with permission—to "(A) warn the person of a hidden danger on the premises if a representative of the nonprofit religious organization has actual knowledge of the hidden danger;

and (B) refrain from intentionally harming the person." I.C. § 34-31-7-2(1). The only element in dispute here is whether Henderson was injured as the result of a hidden danger.

[14] Henderson was injured after slipping on snow and ice. On the morning of her fall, it had been snowing and there was at least two inches of snow on the ground. Snow and ice "covered" the parking lot. Appellant's App. Vol. II p. 170. The snow and ice were clearly visible, as was the fact the parking lot had not yet been treated. And, as Henderson herself acknowledges, snow and ice are generally known to make the ground slippery. Henderson argues "she did not have a specific understanding of the slipperiness" or "an appreciation of the risk" until after she stepped out of the car. Appellant's Br. p. 14. But the extent of the danger or Henderson's appreciation of it is not at issue here. The only question is whether there was a hidden danger. And the undisputed evidence objectively clarifies the snow and ice were not a hidden danger.[2]

[15] Because Section 34-31-7-2 applies, and under that statute no duty was breached, the trial court did not err in granting summary judgment to New Wineskin.

[16] Affirmed.

---

[2] Henderson analogizes her case to *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15 (Ind. Ct. App. 2015). But that case is distinguishable. There, the trial court held there was a genuine issue of material fact as to whether the defendant should have anticipated the plaintiff would walk across the icy parking lot despite the obviousness of the danger. Because the plaintiff was an invitee, the defendant had a duty to maintain the premises in a reasonably safe condition, including the duty to make safe the premises when the defendant should have expected the invitee to fail to protect herself from danger. But here the legislature specifically limited the duty New Wineskin owed Henderson, and thus the traditional duties owed to invitees are not at issue.

Brown, J., and Pyle, J., concur.